## MITCHELL vs. DALL.—June, 1828.

Where one is indebted in several sums, and is about to make a part payment, he has an undoubted right to apply that payment, to either the one or the other of those claims, as he thinks proper; and the creditor is bound to apply the payment, as directed by his debtor.

Although a debtor may not give an express direction at the time of the payment, to which, of several debts, a payment made by him shall be appropriated, yet a direction may be implied from circumstances; but if no application has been made by the debtor, either express, or implied, then the creditor may apply it.

A copy of a letter addressed by a creditor to his debtor, contained in the letter-book of the former, advising the debtor that he had drawn on him for the amount of a particular purchase, is not evidence for such creditor in an action against a guarantee of the debtor, to establish that a payment shortly after received from such debtor, who was indebted on several accounts, was made in discharge of such purchase; though the draft itself, (or evidence of its contents if lost,) accompanied by a letter from the debtor to the creditor, regretting his inability to meet the draft, and promising speedy payment of that demand, followed by a payment a few days after the date of such letter, is evidence to show that it was made in discharge of that particular claim.

The letter of a debtor (or his acknowledged general agent,) to his creditor, directing him to which of two debts, a payment he was about to make him should be applied, is the best evidence, to show on what account such payment was received by the creditor.

Such letter in an action by the creditor, against the guarantee of the debtor for one of his debts, where several were due, is not considered as merely the declarations of a third person, but it is an act by the party, who had the legal right to make the application of the payment, directing in what manner it should be made.

It is a general rule, that all the parties composing a firm must be named as plaintiffs, and an omission to name them, may be taken advantage of on *non assumpsit;* but there is an exception to this rule, for where there are *dormant partners,* it is not necessary they should be named in the writ.

In the legal acceptation of the term *dormant,* as applied to partners in trade, every partner is considered dormant, unless his name is mentioned in the firm, or embraced under general terms as the name of one of the firm and company.

Where goods were sold to L, and D agreed to become answerable for them as a guarantee, upon L's default to pay for them at a fixed day, in an action against D on his guaranty, it is essential that the declaration should contain an express averment, that the debt was not paid by L at the expiration of the time limited for payment; for until there was default on the part of L, no responsibility attached upon D.

To recover upon an *insimul computassent,* in such case, it must appear there was an accounting between the parties after L's debt was due and owing.

APPEAL from *Baltimore* County Court. This was an action of *assumpsit* to recover the sum of $552 97, brought by the appellant, (the plaintiff in the court below,) against the appellee, (the defendant in that court.) The declaration contained *five* counts. The *first* averred, that on the 3d of January 1821, at, &c. in consideration that the plaintiff, at the special instance and request of the defendant, would sell and deliver to *Archibald Austin,* agent of *Jacob Lewis & Co.* on a credit of four months, certain goods, wares and merchandize, the defendant undertook, and then and there faithfully promised the plaintiff, to be accountable to him for whatever goods he should sell and deliver to the said *Austin* at that time, on a credit of four months. And. that, confiding in the promise of the defendant, he did on the day and year aforesaid, at, &c. sell and deliver to the said *Austin,* the agent aforesaid, on a credit of four months, certain goods of great value, at and for certain reasonable prices, then and there agreed upon between the said *Austin* and the plaintiff, amounting in the whole to the sum of $600. And although the credit and time for payment of the price of the said goods, hath long since elapsed, yet the said *Austin* hath not, although often thereto requested, as yet paid the said sum of money, or any part thereof, but hath hitherto wholly neglected and refused so to do, to wit, at, &c. Of all which said premises the defendant afterwards, on, &c. at, &c. had notice; and thereby the defendant then and there became liable to pay the plaintiff the said sum of money when he the defendant should be thereto afterwards requested; and being so liable, the defendant promised to pay, &c. The *second count* was on the same guarantee, though in a different form, stating, after the re-

fusal of *Austin* to pay, &c. That of all which premises the defendant, afterwards, to wit, on, &c. at, &c. had notice: yet the defendant not regarding his said last mentioned promise and undertaking, hath not yet guaranteed or paid to the plaintiff the said last mentioned sum of money, or any part thereof, although requested, &c. The *third count* was for work and labour; goods sold and delivered; for money lent and advanced; and for money had and received, &c. The *fourth count* was for goods, &c. sold to *Austin* at the defendant's request; and the *fifth count* was on an *insimul computassent*. The defendant pleaded *non assumpsit*, on which issue was joined.

1. The defendant's *first* bill of exceptions. At the trial the plaintiff gave in evidence the following letter of guaranty, and the memorandum annexed to it, both of which was admitted to be in the handwriting of the defendant. "*Baltimore*, January 3, 1821. Mr. *M. P. Mitchell*—Sir, As Mr. *Archibald Austin*, the agent of *Jacob Lewis & Co.* wishes to obtain some goods of you on a credit of four months, I hereby agree to guarantee the payment for the amount he may take at this time, if that will facilitate the business between you and him.

Yrs. &c. *James Dall.*"

"Amount for which *James Dall* is responsible. Goods per bill of *M. P. M.*        $372 07
Do. *Charles Moss's* bill,         180 90

             $552 97"

The defendant then offered to prove, that at the date of the said guaranty, the plaintiff was a partner of *Charles H. Appleton* and *William Henry*, trading under the firm of *M. P. Mitchell*, and that the contract of guaranty was made by the defendant with the said co-partnership, and not with the plaintiff; and the goods so delivered under the guaranty, were the goods of the said firm; and that the plaintiff did not carry on any business in his individual capacity at the time before and after the guaranty was entered into. Which evidence the Court, [*Archer*, Ch. J. and *Hanson* and *Ward*, A. J.] on the motion of the plaintiff, rejected. The defendant excepted.

2. The defendant's *second* bill of exceptions. He prayed the court to direct the jury, that the evidence having shown that on the 25th of October 1820, *Mitchell*, (the plaintiff,) *Charles H. Appleton* and *William Henry*, trading under the firm of *M. P. Mitchell*, sold to *Jacob Lewis & Co.* goods to the amount of $395 89, and that the sale of goods referred to in the guaranty having been made, according to the direction of the court as set forth in the *first* bill of exceptions by the plaintiff, in his individual capacity; and the receipts for money paid by the defendant having been paid to, and receipted for, by the plaintiff; and no evidence having been offered of any appropriation of money by *Lewis & Co.* to the extinguishment of the debt due from them to the co-partnership concern of *M. P. Mitchell*, the jury are bound to apply such payments to the extinguishment of the debt due from *Lewis & Co.* to the plaintiff in his individual capacity, for which debt the defendant was guaranty, and not to the debt due by *Lewis & Co.* to the co-partnership of *M. P. Mitchell*. Which direction the court refused to give. The defendant excepted.

3. The defendant's *third* bill of exceptions. He further moved the court to direct the jury, that upon the whole of the evidence given in this cause, as set forth in the several bills of exceptions, if the jury believe the same, the plaintiff was not entitled to recover. Which prayer the court refused to give. The defendant excepted.

4. The plaintiff's *first* bill of exceptions. The plaintiff, after having given in evidence the matters stated as having been given by him, in the defendant's bills of exceptions, further offered to give in evidence the following letters, purporting to be a copy of a letter from the said firm to *J. Lewis & Co.* the persons mentioned in the aforesaid guaranty of the defendant, dated *Baltimore*, the 7th of May 1821, viz. "I have this day drawn on you at three days sight, in favour of *J. C. Richards,* Esqr. for $395 89, amount of your purchase 25th October last, on six months credit. Your last purchase is also due.

*M. P. Mitchell.*"

The said copy of the said letter appearing and being copied in a book kept for the purpose of copying letters of the said

firm, as proved by a competent witness, and was offered in evidence by the offer of said book. The plaintiff also offered in evidence the following letter, admitted to be written by the agent of *Lewis & Co.* to *M. P. Mitchell,* which letter was produced on the trial by the plaintiff, dated *Havre-de Grace,* May 8th, 1821, viz. "We regret to observe by yours of the 7th inst. that you have drawn upon us, at three days sight, for three hundred and ninety-five dollars and eighty-nine cents; not having funds here at this time to meet it, but we presume before the draft becomes payable, you will be paid the amount of it, having directed Mr. *John P. Austin,* who was expected at on Saturday week to *Norfolk,* for money due by that government on deliveries of stores, to pay Mr. *Dall* the amount of the f. ... to pay over to each on his account draught ... ... ... wrote Mr. *Dall* on his return but it would appear he has not informed you, we presume he must have been absent, as Mr. *Austin* was directed to return with all possible dispatch; and having intelligence of his leaving *Old Point Comfort* on Wednesday last, we have no doubt, he will be in *Baltimore* in a few days, when he or Mr. *Dall* will call and pay the amount of your draft." Signed *Jacob Lewis & Co.* per *A. Austin.* To the admissibility of which letters, the defendant objected; and the court sustained the objection, being of opinion that the said letters were not competent evidence. The plaintiff excepted.

5. The plaintiff's *second* bill of exceptions. The plaintiff then gave in evidence the following paper writing, being the letter of guaranty in the defendant's bill of exceptions. All of which were admitted to be in the handwriting of the defendant; and proved the delivery of said goods to the amount of $552 97, to *Archibald Austin,* the agent of *Jacob Lewis, & Co.* and that on the 25th of October 1820, he, as one of the firm of *Appleton, Henry & Mitchell,* which firm was carried on under the name of *M. P. Mitchell* alone, sold to the said *Jacob Lewis, & Co.* goods to the amount of $395 89. The defendant then gave in evidence the two following receipts and letter from the plaintiff to the defendant. "$400. *Baltimore,*

May 10th, 1821. Received of *Jacob Lewis, & Co.* through *James Dall*, four hundred dollars on account.

*M. P. Mitchell.*

"*Baltimore*, 16th June, 1821. Received of Mr. *Jas. Dall*, per account of Messrs. *Jacob Lewis, & Co.* of *Havre-de-Grace*, four hundred dollars.

$400 00.                                    *M. P. Mitchell.*

"*Baltimore*, 5th May, 1821. Mr. *J. Dall*—Dear Sir, I think it necessary to inform you, that the amount for which you have become responsible with me, for Mr. *A. Austin*, agent for *J. Lewis, & Co.* becomes due this day. Very respectfully, your obt. servt.                               *M. P. Mitchell.*"

The plaintiff to show that the amount specified in the first of said receipts, dated May 10th, 1821, was intended to be applied in discharging of the first debt of $395 89, offered to prove, that he drew a draft on *Jacob Lewis, & Co.* dated the 7th of May, 1821, at 30 days sight; for $395 89, which on presentation was not paid, and which was returned to the plaintiff, and *was by him mislaid*, and for which he has made diligent search, but which he has been unable to find; and in connexion therewith offered *to read in evidence* the letter herein before mentioned, dated the 8th of May, 1821, (written by *Archibald Austin*, who it was admitted wss the general agent of *Jacob Lewis, & Co.* and in whose handwriting said letter was written;) and also offered in evidence, the receipt of the plaintiff dated 10th of May, 1821, to the defendant. To which last mentioned evidence; that is to say, proof of the draft drawn by the plaintiff on *Jacob Lewis, & Co.* of the 7th of May, 1821, at 30 days sight, for $395 89, and the letter from *Austin*, the defendant objected. Which objection the court sustained. The plaintiff excepted.

6. The plaintiff's *third* bill of exceptions. The plaintiff, on the evidence stated in the prior bills of exceptions, as offered by both the plaintiff and the defendant, prayed the court to direct the jury, that if they are of opinion, from said evidence, that the payment of $800, (made as appears by the receipts given in evidence by the defendant,) was not directed by *Lewis, & Co.* or by the defendant, to be applied to the discharge of the debt

due by *Lewis & Co.* guaranteed by the defendant, that the plaintiff had a right to apply such payment to the discharge of the debt of $495 89, due before the guarantee, as given in evidence by the plaintiff. Which opinion the court refused to give; but directed the jury, that although no express application of the money was made by *Lewis & Co.* or the defendant, yet the jury were at liberty to infer from the evidence that the payments made by the defendant were applied and intended to be made in payment of his guarantee to the defendant; and that unless they should find, that there was an application of the money by the defendant, at the time of the payment, either expressed or implied, that then the plaintiff had a right to apply the payments. The plaintiff excepted.

7. The plaintiff's *fourth* bill of exceptions. The plaintiff having given in evidence that he was one of the firm in which himself, and one *Henry* and one *Appleton,* were the others, further gave in evidence, that said firm was carried on under the name of *M. P. Mitchell* alone, (the plaintiff in this cause,) and that all the books of said firm, checks drawn by the firm, and notes of sale by the firm, they being auctioneers, were all signed in the name of *M. P. Mitchell* alone. He further gave in evidence, that said firm trading under said name of *M. P. Mitchell,* did, on the 25th of October 1820, sell to *Lewis & Co.* the persons mentioned in the prior bills of exceptions, merchandize to the amount of $395 89. And also offered in evidence the guaranty of the defendant set forth in the prior bills of exceptions; and also that in consequence of the said guaranty the plaintiff, as one of said firm, sold to *Austin* the agent of *Lewis & Co.* the persons named in the said guaranty, goods and merchandize, to the amount of $552 97 more. The defendant then offered in evidence the receipts stated in the prior bills of exceptions, and also, the letter from the plaintiff to him. The defendant, in addition to the evidence offered by him in the former bills of exceptions, also proved that the said *Charles H. Appleton* and *William Henry,* were active partners with the said co-partnership concern, carried on as aforesaid under the firm of *M. P. Mitchell,* and that the said *Appleton &amp; Henry,* were in the constant habit of attending to the business

of said firm, equally with the plaintiff. The plaintiff then prayed the court to direct the jury, that upon the evidence offered by him in this and the prior bills of exceptions, he was entitled to recover. Which opinion the court refused to give. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued at June term, 1827, before BUCHANAN, Ch. J. and EARLE, MARTIN, STEPHEN, and DORSEY, J.

*R. Johnson,* for the Appellant. It will be contended, in behalf of the appellant, that the judgment of the court below should be reversed on the following grounds:

1 Upon the plaintiff's *first* bill of exceptions. That the court erred in not permitting the plaintiff to read in evidence to the jury the letter stated in this exception, of the 8th of May 1821, addressed to the plaintiff by the acknowledged agent of *Lewis & Co.* the same being competent evidence to go to the jury to show on what account the payments made by the defendant to the plaintiff, for *Lewis & Co.* were to be applied.

2. On the plaintiff's *second* bill of exceptions. That the evidence offered in this exception by the plaintiff, of the last draft drawn by him on *Lewis & Co.* dated the 7th of May 1821, for $395 89, and the letter from the agent of *Lewis & Co.* of the 8th of May 1821, it being the letter set forth in the plaintiff's *first* bill of exceptions, were competent evidence to go to the jury, for the purpose of showing in what manner the first payment made by the defendant on the 10th of May 1821, of $400, was to be applied.

3. On the plaintiff's *third* bill of exceptions. That there being no evidence to show that the defendant, or *Lewis & Co.* had directed the two payments of the 10th of May and 16th of June 1821, to be applied to the discharge of the debt due by *Lewis & Co.* to the plaintiff, which the defendant had guaranteed, the court erred in refusing the plaintiff's prayer, that he had a right to apply such payments in the first place, that being a prior debt, to the discharge of the debt of $395 89.

4. On the plaintiff's *fourth* bill of exceptions. The court below erred in not directing the jury, that the plaintiff was entitled to recover; because it was competent for him to sup-

port the action in his own name, the other parties who were concerned with him being in point of law, dormant partners, and because there was no evidence to show that the payments made through the defendant for *Lewis & Co.* were, either by them, or the defendant, directed to be applied to the discharge of the portion of the debt due by *Lewis & Co.* which the defendant had guaranteed; and in the absence of such evidence said payment should have been first applied to that debt due by *Lewis & Co.* which was prior in point of date.

On the *first* and *second* points, he cited 2 *Stark. Evid.* 62. 3 *Stark. Evid.* 1620. *Key v Parnham,* 6 *Harr. & Johns.* 418. *Wysham v Gray,* 7 *Harr. & Johns.* 409. *Drummond v Prestman,* 12 *Wheat.* 515. *Taney v Kemp,* 4 *Harr. & Johns.* 348. 3 *Stark. Evid.* 1091.

The *third* point was abandoned.

On the *fourth* point, he cited, 1. As to the application of the payment. *Gwinn v Whitaker,* 1 *Harr. & Johns.* 754. 3 *Stark. Evid.* 1092. *Plomer v Long,* 2 *Serg. & Lowb.* 334. *(*1 *Stark. Rep.* 153.*) Allstan's Adm'r. v Contee's Ex'r.* 4 *Harr. & Johns.* 351. *Fowke v Bowie,* 4 *Harr. & Johns.* 566.

2. As to dormant partners, he cited *Cabell v Vaughan,* 1 *Saund.* 291. g. (4.) 1 *Chitty's Plead.* 8. *Gow on Part.* 153, 17. *Leveck v Shaftoe,* 2 *Esp. Rep.* 469. *Hall v Smith,* 8 *Serg. & Lowb.* 112. *Lord Galway v Matthew,* 1 *Campb.* 403. *Guidon v Robson,* 2 *Campb.* 302. *Lloyd v Archbowle,* 2 *Taunt.* 324.

*Williams,* (District-Attorney of *U. S.*) and *Meredith,* for the Appellee.

On the *first* and *second* points, they cited 1 *Phill. Evid.* 54. 3 *Stark. Evid.* 1386, (and *note.*) *Evans v Beattie,* 5 *Esp. Rep.* 26. *Bacon v Chesney,* 1 *Stark. Rep.* 192. *Drummond v Prestman,* 12 *Wheat.* 515. *Newson's Adm'r. v Douglass,* 7 *Harr. & Johns.* 417. 1 *Stark. Evid.* 47. *Dunn v Slee,* 3 *Serg. & Lowb.* 140. *Bateman v The City Bank of Baltimore,* 7 *Harr. & Johns.* 104. *Taney v Kemp,* 4 *Harr. & Johns.* 348.

On the *fourth* point. 1st. As to the application of payments, they cited *Tayloe v Sandiford,* 7 *Wheat.* 20. 3 *Stark.*

*Evid.* 1091, 1093, *(note.)*    2d.  As to the dormant partners, they cited *Gow on Part.* 165.    3 *Stark. Evid.* 1070.    *Teed v Elworthy,* 14 *East,* 210.    *Doh v Halsey,* 16 *Johns. Rep.* 34.    *Bryden v Taylor,* 2 *Harr. & Johns.* 396.

The appellee's counsel took an objection to the declaration; because there was no demand averred to have been made of the defendant, and of his refusal, &c. and that there should be proof to support such demand and refusal.    They cited *M'Iver v Richardson,* 1 *Maule & Selw.* 557.    *Morris v Cleasby,* 4 *Maule & Selw.* 574.    *Bank of New-York v Livingston,* 2 *Johns. Cas.* 409.  *Grant v Ridsdale,* 2 *Harr. & Johns.* 186.  1 *Chitty's Plead.* 344.

*R. Johnson,* in reply.    On the *first* and *second* points, he referred to *Owings & Piet v Low,* 7 *Harr. & Johns.* 124.  *Riddle v Moss,* 7 *Cranch,* 206.    1 *Phill. Evid.* 54.    *Ilderton v Atkinson,* 7 *T. R.* 480.    *Birt v Kershaw,* 2 *East,* 458.  2 *Stark. Evid.* 300, *(and note.)  Kahl v Jansen,* 4 *Taunt.* 567.  *Townsend v Downing,* 14 *East,* 567.  *Keightley v Birch,* 3 *Campb.* 523.

On the *fourth* point, he referred to *Tayloe v Sandiford,* 7 *Wheat.* 20.    *Teed v Elworthy,* 14 *East,* 209, 210.    *Coursey v Baker,* 7 *Harr. & Johns.* 28.

With respect to the alleged defect in the declaration, he cited 1 *Chitty's Plead.* 309.

*Curia adv. vult.*

MARTIN, J. at this term delivered the opinion of the Court. In the trial of this cause, *three* bills of exceptions were taken by the defendant to opinions given by the court below, and *four* by the plaintiff.    As the defendant obtained a verdict, and no appeal has been prosecuted by him, it will only be necessary to consider those presented to us by the plaintiff.

This is an action of *assumpsit,* instituted by *Mitchell,* upon an agreement in writing, by which *Dall* engaged, if *Mitchell* would furnish goods to *Lewis & Co.* through their agent, *Archibald Austin,* upon a credit of four months, he would guaranty the payment for them.    This letter of guaranty was dated the 3d of January 1821.    Evidence was given to the jury, that goods to the amount of $552 97, were delivered in pur-

suance of this agreement; and also that *Lewis & Co.* were indebted to *Mitchell* in another sum of $395 89 for goods sold to them on the 25th of October 1820. *Dall,* to discharge himself from the claim of *Mitchell,* gave in evidence to the jury, two receipts signed by M*itchell,* the first dated the 10th of May 1821, and the second, on the 16th of June in the same year, each for the sum of $400; and also a letter from M*itchell* to *Dall,* dated the 5th of May 1821, advising him, that the amount for which he had become responsible for *Lewis & Co.* was then due. M*itchell,* to prove the money mentioned in the receipt of the 10th of May 1821, ought to be applied to the discharge of the debt due by *Lewis & Co.* on the 25th of October 1820, and not to that for which *Dall* was responsible, offered to give in evidence a *copy* of a letter, alleged to have been written by him to *Lewis & Co.* which copy was found in a book kept for the purpose of copying letters by the firm of which M*itchell* was a partner; and who offered to prove, that he (*Mitchell,*) drew a draft on *Lewis & Co.* dated the 7th of May 1821, at 3 days sight, for $395 89, which was not paid, but was returned to him; which draft has been *lost, and cannot be found;* and in connexion with the said draft, offered to read in evidence the letter found in the record, written by *Archibald Austin,* as the agent of *Lewis & Co.* dated May 8th 1821; but the court refused to permit this evidence to go to the jury. And whether this procedure was correct, is the only question presented to us by the *first* and *second* bills of exceptions, on the part of the plaintiff.

We agree in opinion with *Baltimore* county court, that the copy of the letter found in the letter-book of the plaintiff, was not legal evidence for him in the cause, and that it was properly rejected; but we must dissent from them, so far as it relates to the evidence offered to show a draft was drawn on *Lewis & Co.* and the letter written by *Austin,* the acknowledged agent of that firm.

If the draft, drawn by M*itchell* on *Lewis & Co.* had been in his possession, and he had it in his power to produce it, it certainly ought to have been produced; but when it was proved to have been lost, and could not be found, he ought to have been permitted to have given evidence of its contents.

It is admitted in the record, that *Austin* was the agent of *Lewis & Co.* and it has been decided by this court, that where an agency is sufficiently established, the acts and declarations of the agent, within the scope of his authority, are to be considered as the acts and declarations of the principal, of which evidence may be given as if they had been done and made by the principal himself. *City Bank of Baltimore v Bateman,* 7 *Harr. & Johns.* 108. *Lewis & Co.* were indebted to *Mitchell* in two several sums of money, and were about to make a part payment; they had an undoubted right to apply that payment to either the one or the other of those claims, as they thought proper, and *Mitchell* was bound to apply it, as directed by his debtor. On the 8th of May 1821, *Lewis & Co.* write to *Mitchell,* (for we consider the letter by *Austin,* their acknowledged agent, as their letter,) in substance, that they were about to remit to him a sum of money for the purpose of discharging the debt of $395 89, for which a draft had been made on them. The money was received by *Mitchell,* and the question before the jury was, whether *Lewis & Co.* had given any directions to which debt this money should be applied? We think the letter was not only legal, but the best evidence, for the purpose for which it was offered. It was the direction of the debtor to the creditor, *in writing,* how this payment was to be applied. It was the creditor's authority for making the application, and after the receipt of this letter, he could not have rightfully applied it in any other manner. It has been contended that *Lewis* and *Austin* were legal witnesses in this cause, and ought to have been produced by the plaintiff. Admit they were competent witnesses, why was it necessary that he should have produced them? Was it to prove that *Austin* was the agent of *Lewis & Co.?* That fact *was admitted* by the defendant, in the trial of the cause. Was it to prove that *Austin wrote a letter* to the plaintiff, as the accredited agent of *Lewis & Co.?* That fact was also admitted by the defendant; and if they were called on to prove the manner they had directed this payment to be applied, the moment they mentioned this direction was given in a letter, in the possession of the plaintiff, they would have been stopped from giving in evidence the contents of that letter, and the letter itself would have been demanded of the plaintiff.

The defendant having *admitted* that *Austin* was the agent of *Lewis & Co.* and that he had, in *that character*, directed the application of the payment, *in a letter to the plaintiff*, the *letter* itself was the only legal evidence to show what that direction was.

It was not merely the declarations of a third person, as was ingeniously urged in the argument, but it is *an act done* by the party who had the legal right to make the application of the payment, directing in what manner it should be made.

The *third* bill of exceptions was not relied on by the counsel for the appellant; we shall therefore pass it without notice; the law submitted to the court in that exception, will, however, necessarily demand our attention in examining the *fourth* bill of exceptions.

The *fourth* bill of exceptions was a general prayer on the part of the plaintiff, that if the jury believed the evidence offered by him, they must find a verdict in his favour. This prayer was refused by the court.

The first question to be disposed of under this exception is, whether *Mitchell* could sustain the action in his *own* name, and without joining his partners, *Appleton & Henry*, in the writ?

It is a general rule of law, that all the parties composing a firm must be named as plaintiffs, and an omission to name them may be taken advantage of, on *non assumpsit. Gow on Partnership*, 164, 167, 153; but there is an exception to this rule, for where the partners *are dormant*, it is not necessary they should be named in the writ. *Gow*, 167, 153. *Lloyd v Archbowle*, 2 *Taunt.* 324. *Leveck & Pollard v Shaftoe*, 2 *Esp. Rep.* 468. 1 *Chitty on Pleading*, 8.

What then constitutes a dormant partner, is the point upon which this part of the cause depends. In common parlance it appears a solecism in terms to say, that he who was actively engaged in the business, should be dormant, yet in the strict legal acceptation of the term, we are led to believe, every partner is considered dormant, unless his name is mentioned in the firm, or embraced under general terms, as the name of one of the firm and company. We are brought to this conclusion, not

only by the definitions contained in elementary authors, but by adjudged cases upon this subject.

*Gow*, in his Treatise of Partnership, 12, 13, describes the several kind of partners. He says, "An actual ostensible partner, is a party who not only participates in the profits, and contributes to the losses, but who appears and exhibits himself to the world as a person connected with a partnership, and as forming a component member of the firm. A dormant partner is likewise a participant in the profits of the trade, *but his name being suppressed and concealed from the firm*, his interest is consequently not apparent." The same distinction is taken in *Watson on Partnership*, 34, 46. He says, "Sometimes all the partners in trade do not appear ostensibly to the world, though they share in the profits and loss, &c. *Where they do not suffer their names to appear in the co-partnership firm*, but at the same time receive their share of the profits, and bear their risk of loss, they are styled dormant partners." In the case of *Leveck v Shaftoe*, 2 *Esp. Rep.* 468, Lord *Kenyon* held, "that if a person had been a partner, and *his name in the firm*, and he afterwards *withdrew his name*, but continued to receive part of the profits; though such person still continued liable to all the demands against the partnership on the ground of the profits he derived; he would not allow persons who dealt with the firm, *without his name appearing in it*, to avail themselves of the objection of such partner's not having joined in the action, for the purpose of a *nonsuit*." See also the case of *Lloyd v Archbowle*, 2 *Taunt.* 324. *Lucas and others v De la Cour*, 1 Maul. & Selw. 249; and *Bryden v Taylor*, 2 *Harr. & Johns.* 396.

In this case it appeared the firm was carried on *under the name of Mitchell alone;* that all the books of the said firm, checks drawn, and notices of sale, were signed in his name; and that every part of the transaction, that gave birth to this suit, the letter of guaranty, and other evidence offered, was addressed to him alone, without reference to his partners. They were therefore *dormant* partners, and it was not necessary to name them in the writ.

The next question is the application of the payments made by *Lewis & Co.* And in deciding this question, we shall confine

our remarks solely to the case as it appears in the record, without intending to lay down a rule of law, that will apply to every case that may possibly arise. We adopt the law, as declared by the court in the *third* bill of exceptions, as correct in this case. That it is the undoubted right of the debtor to direct the appropriation of money paid by him to any debt he may think proper. And although he may not give an *express* direction, at the time of the payment, such direction may be *implied* from circumstances; but if no application has been made by the debtor, either express or implied, then the creditor may apply it.

Many cases might be produced to sustain this doctrine; we deem it necessary to refer only to a few. In *Tayloe v Sandiford*, 7 *Wheat.* 20, Chief Justice *Marshall*, in delivering the opinion of the court, says "a person owing money under distinct contracts, has undoubtedly a right to apply his payments to which ever debt he may choose; and although prudence might suggest an express direction of the application of his payments, at the time of their being made, yet there may be cases in which this power would be completely exercised without any express direction given at the time. A direction may be evidenced by circumstances as well as by words. A payment may be attended by circumstances which demonstrate its application as completely as words could demonstrate it " In *Newmarch v Clay & others*, 14 *East*, 242, Lord *Ellenborough* said, "that there might be a special application of a payment made arising out of the nature of the transaction, though not expressed at the time in terms by the party making it." And it was admitted in the argument of that cause, as a general rule, and many cases cited in support of it, that if the debtor, who owes money on several accounts, do not apply a part payment when made, to a particular debt, but pay in the money generally, the creditor has a right to apply it to any part of his demand which he pleases. In the case of *The Mayor and Commonalty of Alexandria v Patton & others*, 4 *Cranch*, 320, Chief Justice *Marshall* declares it to be a clear principle of law, "that a person owing money on two several accounts, as upon bond and simple contract, may elect to make his payments to which account he pleases; but if he fails to make the application, the election passes from him to the creditor."

Objections have been taken in *this* court, to the sufficiency of the declaration filed in the cause, which we think justified the court below in refusing the prayer of the plaintiff in the *fourth* bill of exceptions. The agreement, which is the foundation of this suit, is susceptible of but one rational construction. That *Lewis & Co.* being desirous to purchase goods, &c. of *Mitchell, through the agency of Archibald Austin, Dall* engages, if the goods are furnished to *Lewis & Co.* upon a credit of four months, and they do not pay for them at the expiration of that time, that he will do it. The goods then are sold to *Lewis & Co.* They are the original debtors, and upon their default, and their default alone to pay, *Dall* becomes answerable. *Austin* has nothing to do in the transaction, but merely as an agent for *Lewis & Co.* No sale is made to him individually, nor is he bound to pay for the goods. It is essential, therefore, that the declaration should contain an express averment, that the money was not paid by *Lewis & Co.* at the expiration of the time limited for payment; for until there was default on the part of *Lewis & Co.* no responsibility attached upon *Dall.*

The *first count,* instead of stating the money had not been paid by *Lewis & Co.* (the condition upon which *Dall* had agreed to pay,) says *Austin* did not pay it. *Austin* was not bound to pay it. He was not the debtor, nor did *Dall* assume any responsibility upon the nonpayment by *Austin.*

The declaration, to be effective, ought to have averred the nonpayment by *Lewis & Co.* for it by no means follows, that although not paid by *Austin,* that *Lewis & Co.* may not have discharged the debt.

The same objection applies to the *second count.* It is stated that *Austin,* and not *Lewis & Co.* did not pay. The *third count* has no reference to the guaranty; it charges *Dall* with goods, &c. money lent, &c. furnished to him on his own account, and for his own use, and not as being charged with a debt, upon the default of another to pay it. The *fourth count* is supposed to be sufficient; because on default of *Lewis & Co.* to pay, it was unnecessary to set out the special agreement in the declaration, but that it might be given in evidence on the general count. If this position were correct, it would not support the count. If the rule relied on could be applied to this case,

still it was necessary to set out the transaction as it appeared in evidence—that the goods, &c. were sold to *Lewis & Co.* and *Dall* promised to pay for them.   But in this count, *Lewis & Co.* are entirely lost sight of.   It is stated, not as a debt contracted by them, but by *Archibald Austin*; and surely evidence that *Dall* promised to pay the debt of *Lewis & Co.* will not make him answerable for a debt contracted by *Austin* on his own account. The *fifth count* is on an *insimul computassent;* and whether this can be sustained, must depend upon the evidence in the cause.   The responsibility of *Dall* under the guaranty, did not attach until default was made by *Lewis & Co.* to pay, nor was there any debt due and owing by him until the expiration of the time limited for payment.   His undertaking was collateral and conditional, and to make him answerable upon an *insimul computassent,* it must appear there was an accounting between the parties, after the debt was due and owing; and such is the express language of the declaration.

This is not like a debt between two persons, on their own account, with a future time for payment; there the debt is due, when the goods are delivered.   But in this case, as before observed, the assumption is conditional; there is no debt before default, nor is there any legal demand on *Dall,* until that time. The evidence offered by the plaintiff, to support this count, was a memorandum signed by *Dall,* admitting the amount of the goods delivered under the guaranty; but that writing has no date.   If it should be found by the jury, that the memorandum was signed *after* the time limited for payment, it may be sufficient to charge *Dall* on the *insimul computassent*; if *before,* it could only be evidence to show the amount of the claim, on a count founded on the special agreement.

An objection was also made to the declaration, that it did not contain an averment, that a demand had been made on *Lewis & Co.* for payment, before this suit was brought.   Having declared *all* the counts founded *on the guaranty* insufficient, it is unnecessary to consider this objection.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.