Order unanimously affirmed, with ten dollars costs and disbursements.

---

Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of MATILDA UHL, Respondent, for Compensation to Herself for the Death of JOHN UHL, Her Husband, under the Workmen's Compensation Law, *v.* GUARANTEE CONSTRUCTION COMPANY, Employer, and UNITED STATES FIDELITY AND GUARANTY COMPANY, Insurance Carrier, Appellants.

Third Department, November 15, 1916.

**Workmen's Compensation Law — death from dilatation of heart — excessive physical strain — appeal — when findings of Commission as to facts conclusive.**

The State Industrial Commission is justified in making an award to the widow of an employee who, while engaged in bending heavy steel rods which required great physical effort, died suddenly through dilatation of

the heart, and this although he may have had a previous cardiac lesion.

A finding of the Commission upon a question of fact is conclusive upon the Appellate Division, the only question being whether there is any evidence to sustain the finding. If there is no evidence the finding may be treated as an error of law.

Appeal by the Guarantee Construction Company and another from an award of the State Industrial Commission, made on the 5th day of May, 1916.

*Leonidas Dennis* [*William Dike Reed* of counsel], for the appellants.

*Egburt E. Woodbury, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondent.

Kellogg, P. J.:

The only question is whether the death was the result of an accidental injury. The Commission has so found. Its finding is challenged on the ground that there is no evidence tending to sustain it, and that the death was the result of chronic endocarditis and was not accidental. The employee was about thirty-seven years of age, five and one-half feet high, weighing about 160 pounds, apparently a strong, able-bodied man and well nourished and was performing his usual work well and cheerfully and had worked regularly. On May twenty-third he was examined for insurance in the John Hancock Insurance Company, and the doctor found him all right. He died October fourteenth following. The widow says that he did not appear to be sickly and never complained; that he worked every day and worked Sundays, too, and the week of his death he had worked overtime, starting at six o'clock a couple of mornings. The coroner's physician saw the body the day after death, and made his diagnosis entirely from what the widow told him and the casual appearance of the body. No autopsy was had. He says the widow told him that her husband had not been feeling well for two or three days and she stated his symptoms, which he could not relate; but he inferred from the symptoms and the appearance of the body that death was due to chronic endocarditis. His evidence, however, is not very satisfactory upon that point. At the time of his death the

deceased was working with one Sullivan inside of a form for cement work, and they were required while bending over to spring four heavy steel spring rods and to insert another rod under them; the rods were forty feet long and one and one-quarter inches in diameter. They were used to reinforce the concrete. The lifting was done at the end of the rods where they came through a hole in the form box. The positions in which the rods were "made it extra hard straining and lifting. It was a short lift, and the rod braced against the box we were lifting." Immediately upon springing the rods Uhl fell over dead, blood flowing from his nostrils. Sullivan says the strain in lifting the rod was very unusual, arising from the peculiar, unusual way in which the rods were placed, and caused a feeling which he described as if his stomach "was turning inside out." He thinks he lifted about 300 pounds and that Uhl lifted more. The Commission find that Uhl had a cardiac lesion, which became aggravated by the unusually heavy lifting which he performed in springing the rods and that there was thereby caused a sudden dilatation of the heart, and consequently heart failure, resulting in death. This is not inconsistent with the testimony of the coroner's physician, as follows: "Q. Now, doctor, as a pathologist, accepting your diagnosis, admitting that it may have been endocarditis, what was the sudden exertion in consequence of the heavy lifting likely to have [been] upon such a heart? A. It might give acute dilatation. Q. Due to what? A. Due to lack of muscular power. Q. And that is possible to cause sudden death? A. Yes, sir."

We are not called upon to determine whether the evidence clearly established that this death was accidental. The finding of the Commission upon a question of fact is conclusive upon us, and the only question is whether there is any evidence to sustain such a finding. If there is no evidence the finding may be treated as error of law. If the heavy and unusual strain aggravated the cardiac lesion and caused a sudden dilatation of the heart and consequent heart failure, resulting in death, the death may well be considered as accidental and within the act. In *Matter of Broleski* (171 App. Div. 959) the deceased had chronic heart disease, the valves of the heart being thick and curled up, but he came to his death through over-exertion, or

from an electric shock, and the award of the Commission was sustained.

In *McCahill* v. *New York Transportation Co.* (201 N. Y. 221) the injured person died of delirium tremens, precipitated or hastened by the accidental injury, caused by the defendant's negligence, and it was held that the negligence was the proximate cause of the death. In the present case there was no perceptible physical injury, but death resulting from a strain, as stated, may well be called accidental. The award of the Commission should be affirmed.

Award unanimously affirmed.