In the Matter of the Claim of LOUISA HAMMOND, as Administratrix, etc., of LEON HAMMOND, Deceased, Respondent, *v.* THE CITY OF FULTON, Appellant.

Fourth Department, January 16, 1917.

Municipal corporations — city of Fulton — death of "call" fireman through performance of duties — when widow not entitled to compensation — General Municipal Law construed.

The widow of a "call" fireman of the city of Fulton is not entitled to recover from the city the sum of $2,500 under section 205 of the General Municipal Law, as amended, or under section 119 of the city charter, where the husband was killed in the performance of his duties, there being no proof that the decedent had been a volunteer fireman in either of the villages which were consolidated to make the present city of Fulton.

KRUSE, P. J., dissented, with memorandum.

APPEAL by the defendant, The City of Fulton, from an order of the county judge of Oswego county, entered in the office of the clerk of the county of Oswego on the 23d day of August, 1916, directing the city of Fulton to pay to Louisa Hammond, as administratrix, the sum of $2,575 and costs.

An appeal is also taken, as stated in the notice of appeal, from the findings and decision of the county judge.

*William S. Hillick,* for the appellant.

*Thomas Woods,* for the respondent.

DE ANGELIS, J.:

The order has for its alleged basis section 205 of the General Municipal Law (Consol. Laws, chap. 24; Laws of 1909, chap. 29), as amended by chapter 400 of the Laws of 1914, and section 119 of the charter of the city of Fulton, being chapter 63 of the Laws of 1902.

Leon Hammond, the husband of the petitioner, died on the 30th day of November, 1915, as the result of injuries suffered by him on that day while engaged in the performance of his duties as a call fireman of the city of Fulton. His wife, the petitioner, was duly appointed administratrix of his estate by the Surrogate's Court of Oswego county, December 27, 1915,

and on the same day filed a claim against the city for the sum of $2,500. The claim was rejected by the city authorities whereupon by petition she instituted the proceeding resulting in the order appealed from. The county judge wrote an opinion and also made a formal decision containing findings of fact and conclusions of law which appear in the record. There was no controversy between the parties as to the facts and the defendant filed exceptions to the conclusions of law.

The defendant's charter shows that it was created from the former village of Fulton and village of Oswego Falls. Section 4 of the charter contains the following provision: "All rules and regulations pertaining to the government of the fire departments of the said villages, in force at the time of the passage of this act, shall remain, be and continue the same under the said city as under said village governments until repeal thereof and the adoption of other and further rules and regulations in relation thereto; and all officers and members of said fire departments of the villages of Fulton and Oswego Falls shall become and be the officers and members of the fire department of the city of Fulton, and shall perform all the duties devolving upon them as such firemen, and have and retain all the rights and privileges in the same manner and in all respects as if this act had not been passed, subject, however, to the further provisions of this act. The ownership and control of all the property and effects pertaining to or connected with the fire departments of said villages shall, by virtue of this act, vest in the city of Fulton, in the same manner and to the same extent in all respects as the same is now vested in said villages and fire departments."

Sections 115, 116, 117 and 119 of the charter are as follows:

"§ 115. Organization of fire department.— The fire department shall consist of a chief, an assistant chief, eight paid firemen, and as many call men as the board of fire and police commissioners, from time to time, may determine to be necessary.

"§ 116. Volunteer firemen to be preferred.— Active members of the volunteer fire companies comprising the existing fire departments of Fulton and Oswego Falls shall be preferred in all appointments, except chief and assistant, provided they

possess the qualifications prescribed by the board of fire and police commissioners, and provided also that no person shall be appointed a paid fireman who shall at the time of his appointment be above the age of thirty-five years.

"§ 117. Pay of firemen.— The chief shall receive an annual salary of two hundred dollars, the assistant chief shall receive an annual salary of one hundred dollars, the paid firemen shall receive a monthly salary of forty dollars, the call men shall receive such compensation per hour for service at fires or when called out for practice or review, as shall be determined by the board of fire and police commissioners, not however, exceeding fifty cents per hour, to be audited by said board and paid by the chamberlain on its order."

"§ 119. Exemption of firemen from military and jury duty. — The chief, assistant chief, and paid men of the said fire department shall be exempt from military and jury duty while in the service of the city, and the call men shall be entitled to the same privileges and exemptions as are accorded by the laws of this State to volunteer firemen."

At the time of the adoption of the charter of the city of Fulton, chapter 615 of the Laws of 1895 provided that if an active member of a volunteer fire company in any incorporated village or in any fire district of a town outside of an incorporated village died from injuries incurred while in the performance of his duties as such fireman within one year thereafter, the village or town should pay to his executor or administrator for the benefit of his next of kin the sum of $500, and such sum was made a charge upon the village or town to be assessed upon the property and persons in such village or fire district liable to taxation, and to be levied and collected in the same manner as other village taxes or town charges. This act was amended by chapter 49 of the Laws of 1906 and thereby its provisions were extended to active members of volunteer fire companies in cities. This provision so amended was incorporated into the Consolidated Laws and became section 205 of the General Municipal Law (*supra*). Such section was amended by chapter 400 of the Laws of 1914, and it is under the provisions of the section as so amended that the petitioner made her claim which has been allowed by the county judge. The amount to be paid as

provided in the amended section was increased from $500 to $2,500. In this amended law there is a provision for relief applicable to a city which maintains a pension fund which has no bearing here because the city of Fulton has no pension fund.

It is entirely clear that at the time of the adoption of the charter of the city of Fulton there existed no general law of the State entitling the estate of a fireman in a city to any sum of money in case of his death while in the performance of his duties or otherwise. Although the provisions of the charter already quoted show that in the two villages which gave their life to the creation of the city there existed volunteer fire companies, it cannot be successfully claimed that any provision in the charter carried to any persons who became firemen under the charter the benefit of chapter 615 of the Laws of 1895. There is no claim that the petitioner's decedent had been a volunteer fireman in either village. It is true that the volunteer firemen of the villages were to be preferred in all appointments in the fire department of the city except those of chief and assistant chief (Charter, § 116), but such of the volunteer firemen of the villages as might have been appointed to any of the positions in the fire department of the city did not retain their status as volunteer firemen. The fact that they received no pay for their services distinguishes volunteer firemen as such. The designation of certain firemen as " call men " appears in subdivision 8 of section 200 of chapter 414 of the Laws of 1897, being chapter 21 of the General Laws, the then existing general Village Law. In that legislation they are described as ·" duty or ' call men,' " and provision was made to compensate them for their services. In the classification of the firemen of the city the description of some of them as " paid firemen " does not seem quite appropriate because the chief, the assistant chief, and the call men are likewise paid men as shown by section 117 of the charter, so that little significance exists in describing these men as " paid firemen " other than for the simple purpose of classification. But it is argued that section 119 was designed to give the call men in the fire department of the defendant all the rights of volunteer firemen that existed at the time of the adoption of the charter

and all added rights which have been conferred upon volunteer firemen since the adoption of the charter. The particular language of the section upon which this argument is founded is "and the call men shall be entitled to the same privileges and exemptions as are accorded by the laws of this State to volunteer firemen." At the time of the adoption of the charter certain exemptions and privileges were accorded to volunteer firemen in express terms by section 21 of chapter 370 of the Laws of 1899 (the Civil Service Law; Gen. Laws, chap. 3), and as the members of volunteer fire companies were members of the fire departments of villages (Village Law [Gen. Laws, chap. 21; Laws of 1897, chap. 414], § 203) by implication, they became entitled to the privileges conferred by section 209 of such Village Law and the exemptions specified in subdivision 13 of section 1030 of the Code of Civil Procedure as it existed in 1902. (See Laws of 1883, chap. 400.) In this connection it is to be observed that the words "privileges and exemptions" are to be construed in view of what they covered at the time of the adoption of the charter. The word "privilege" may be used in a variety of senses. The Century Dictionary gives this definition of the word: "A special and exclusive right conferred by law on particular persons or classes of persons, and ordinarily in derogation of the common right." We think it was in this sense that the word "privileges" was used in this statute. The heading of the section, "Exemption of firemen from military and jury duty," has some bearing in the direction indicated. As the privileges accorded were in derogation of the common right, they should not be enlarged unless the legislative intention to enlarge them is unmistakable. As these call men are entitled to pay for their services as shown in section 117 of the charter, why should their families receive benefits denied to the families of other firemen? It seems to us that they should not.

We think the county judge was in error in allowing the petitioner's claim and that his order should be reversed and the petition dismissed.

All concurred, except KRUSE, P. J., who dissented in a memorandum.

KRUSE, P. J. (dissenting):

At the time the defendant became a city in 1902 (Laws of 1902, chap. 63) it assumed all the obligations of the villages from which it was formed. The rights of all persons which had arisen or accrued against the villages remained intact and were in no wise affected or changed thereby. Special reference was made to the fire departments of the villages, which at that time seem to have been composed of volunteer firemen. (§ 4.) The act contemplated changing the fire department to practically a · paid department, requiring, however, volunteer firemen to be preferred. The firemen were classified as paid men and call men. The salary of the officers and paid men was fixed. The call men were only to be paid by the hour for service at fires or when called out for practice or review. The officers and paid men were exempted from military and jury duty, and it was provided that "the call men shall be entitled to the same privileges and exemptions as are accorded by the laws of this State to volunteer firemen." (§§ 115–119.)

I think this provision had the effect to leave the status of the call men as volunteer firemen unchanged. While the claim here in controversy, at the time of the change from village to urban form of government, did not have even a potential existence (for it does not appear that the fireman for whose death the petitioner seeks to recover was then connected with the fire department), it is clear that at that time in case of death of volunteer firemen a specific sum was to be paid to their executors or administrators for the benefit of their next of kin.

It is true that the provisions of the act which is now the General Municipal Law (Consol. Laws, chap. 24 [Laws of 1909, chap. 29], § 205, as amd. by Laws of 1914, chap. 400) respecting such claims as this were not made applicable to cities until four years after this city had been organized (Laws of 1906, chap. 49, amdg. Laws of 1895, chap. 615), but if these men retained their status as volunteer firemen, they came within the provisions of the act, even if they lost the benefit of the similar provisions contained in the village charters when the villages became a city.

These call men do not follow fire service as a vocation. They have no fixed salary; they respond upon call and are paid

a mere pittance for their service. It is but just that if injury or death results, some compensation should be made to them for such injuries or to their dependents in case of death. The provision should receive a liberal rather than a narrow and restricted construction. I think the petitioner's claim is within its provisions.

My conclusion is that the county judge was right and that the order should be affirmed, with costs.

Order and determination of County Court reversed and application denied, without costs.