<hr />

Before State Industrial Commission, Respondent.

In the Matter of the Claim of Helen G. O'Connell, Respondent, for Compensation under the Workmen's Compensation Law, on Behalf of Herself and Infant Son on Account of the Death of John J. O'Connell, v. Adirondack Electric Power Corporation, Employer and Self-Insurer, Appellant.

Third Department, November 10, 1920.

**Workmen's Compensation Law — death caused by heart disease — when nature of employment not cause of death — accidental injury.**

In a proceeding under the Workmen's Compensation Law it appeared that it was the duty of the deceased to observe fluctuations of current as shown upon the electrical indicators of his employer which was engaged in generating electric power for transmission to consumers, and to telephone the necessary orders in case of breakdowns on the wires which were quite frequent. In the performance of his duties and nearly one hour after a breakdown the deceased while telephoning orders fell back in his chair and died within a few minutes, and it appeared upon a post mortem examination that his heart was twice normal weight and that he had suffered from heart trouble for many years. On all the evidence, *held*, that an award based upon a finding that death was due to accidental injury should be reversed and the claim dismissed.

John M. Kellogg, P. J., dissents.

Appeal by the defendant, Adirondack Electric Power Corporation, from a decision and award of the State Industrial

Commission, made and entered in the office of said Commission on the 23d day of December, 1919, reversing and rescinding the action theretofore taken by said Commission whereby an award was disallowed.

*Brackett, Todd, Wheat & Wait* [*Sheridan P. Wait* and *B. P. Wheat* of counsel], for the appellant.

*Charles D. Newton, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

H. T. KELLOGG, J.:

The deceased was chief operator of the electrical system of a corporation which generated electric power for transmission over many lines of wire to various consumers, among which were the United Traction Company and the Municipal Gas Company of Troy, N. Y. It was the duty of the deceased to observe fluctuations of current as shown upon electrical indicators, to telephone necessary orders to the various substations in relation to the maintenance of power supply, to receive messages as to breakdowns or other troubles on the electric lines, and to issue the necessary orders over the telephone to locate and remedy them. Breakdowns on the wires were not unusual or unexpected, occurring, as the proof shows they did, as many as five or six times a day or five or six times a week. About eleven o'clock on the day of his death a breakdown occurred on the wires which carried the current into Troy, thereby shutting off power from the lines of the United Traction Company, so that the operation of its surface railway temporarily was suspended. The interruption of current lasted for about eleven minutes, during which time the deceased, sitting in his office chair, made numerous telephone connections on the switchboard before him and gave and received many telephone messages to and from operatives on the company's lines. At the end of this period the current was restored, and for about fifty minutes thereafter the deceased busied himself in telephoning to various substations to check up the losses of current sustained through the breakdown by the many customers of his employer. He was in the act of telephoning at twelve-five when he fell back in his chair, and in a few minutes was pronounced to be dead. A post mortem

examination disclosed that deceased's heart was twice its normal weight, and that he had been a sufferer from heart trouble for many years. Physicians testified that he died either from acute dilatation of the heart or from a thrombosis, and that either of these conditions might have been precipitated by mental effort, worry, nervousness or excitement operating to increase the rapidity of the action of his heart. The Industrial Commission has held that the death was due to accidental injury, and have made an award therefor.

The interruption to the electrical current appears to have been caused by the parting or the confusion of wires occasioned by a violent wind storm. This, doubtless, constituted an accident to the wires, but it was not an accident which befell the deceased. The deceased was not present at that accident; he did not witness it; he did not suffer from it. Information of the breakdown came to the deceased through the electrical indicators or over the telephone, and if his mind or nerves were in the least affected it was by the news of the accident rather than the accident itself. It would be a strange perversion to term the mental apprehension of news communicated an accident or an occurrence to the mind or body of the person receiving such news. It would be particularly strange in such a case as this where the news conveyed was of a kind neither infrequent, unexpected nor alarming. To my mind it is self-evident that there was no happening of an accident which involved the deceased. Moreover, in defining injuries which are compensable the Workmen's Compensation Law uses the noun " injuries " qualified by the adjective " accidental," which would seem to indicate that there must be a concurrence of both injury and accident at one and the same time. If in this case we assume either that the accident to the wires or the communication of the news of that accident was an accident which occurred to the deceased the immediate effect thereof did no more than to make the deceased nervous, apprehensive or excited. Clearly, a man has not sustained an injury whose mind has been made abnormally active or whose nerves have been more than ordinarily excited. Consequently, the accident, if one there were, was unaccompanied by any injury whatsoever. When the deceased's heart became affected a full hour had

elapsed between the so-called accident and the physical injury which then occurred, no injury whatsoever having meanwhile been done to his body or mind. There was, therefore, a complete disassociation between the so-called accident and the injury which caused the death, so that no accidental injury appears ever to have been inflicted upon the deceased. Doubtless, his heart became affected through an acceleration of its action due to mental activity or nervous excitement, but those were neither injuries nor accidents. In my view the deceased sustained no injury arising from " external, violent or accidental means," and, therefore, no accidental injury. (*Richardson* v. *Greenberg,* 188 App. Div. 248.)

Consequently no award should have been granted.

The award should be reversed and the claim dismissed.

All concur, KILEY, J., with a memorandum, except JOHN M. KELLOGG, P. J., dissenting.

KILEY, J. (concurring):

Claimant's intestate died on January 24, 1919. Physician's proof of death says the immediate cause was cardiac dilatation, mitral regurgitation. Cardia means heart; cardiac means pertaining to the heart; mitral is applied to the valve of the heart; regurgitation means an eructation or throwing back, and eructation means " belching." Dilatation means, when applied to the heart, an increase in size of one or more of the heart cavities from weakening of the muscles. All of this is summed up in one word, viz., endocarditis, which means heart trouble. An autopsy was had and the heart was found to be twice the normal weight or size. He had a weakened and weak heart, afflicted with the foregoing specifics. His doctor says that his death was due to the condition of the heart found, hastened by unusual mental exertion alone. The evidence is to the effect that this condition may, or in this case might, come on in six months or twenty years. He says he had operated in fifteen or twenty autopsies involving the question of heart trouble, and that this was the worst he had ever seen. He says the undue muscular strain put upon the heart by the work he was doing at that time, I

suppose the occasion of the strain covering the whole period is meant, would cause death in the particular case of this deceased. The presiding justice says this case comes within the provisions of the act, and cites *London* v. *Casino Waist Co.* (181 App. Div. 962). No opinion was handed down in that case; the facts as briefly stated by ·the presiding justice are that some one shouted fire in the factory, others took up the refrain, a panic ensued, this girl fainted. It is possible there was some pushing or jamming, cannot tell. That case, in absence of evidence, is not of much value, it should not be applied outside of the facts of that particular case. Mr. Justice HENRY T. KELLOGG writes in this case and cites *Richardson* v. *Greenberg* (188 App. Div. 248), in which he wrote a well-considered and able opinion. His position is that there was no accident incidental to and arising out of the employment; that while there was an accident to the telephone system, it was not to, and of course did not involve the deceased. I cannot find any case in which the opinion is published where compensation has been awarded for mental strain alone. The Attorney-General recognizes this condition as new, when he says in his brief: " We cannot see any distinction between a strain which is mental rather than physical. The effect upon the heart in either case is the same." Of course there is a distinction and the court is right up against that distinction in this case; there can be no side stepping or dodging it; the question is, are we going to recognize mental strain or mental hazard, alone, as productive of a compensable injury; if we are ever going to do so, this case contains all of the elements for affirmative action. I am going to dissent to the report of the presiding justice upon another ground, which so far as I can find is also new. The Commission upon a hearing duly had denied an award to this claimant — some months after, and after the personnel of the Commission had partially changed, the Commission, as then constituted, without notice to defendants, or to any one, rescinded or reversed its former decision and made the award from which this appeal was taken. I am not unmindful of the provisions of sections 22, 23 (amd. by Laws of 1917, chap. 705) and 74 of the Workmen's Compensation Law. I fail to find ·where such action, as here complained of, has

been taken under the broad powers in these sections granted to the Commission, without notice to the party affected by such change. Unless we are going to establish this Commission as a separate and distinct entity responsible to no other court or body; a machine self propelled, self oiled, and without brakes or need for any; we must say so in this case, because again to use a common but illuminating expression, we are up against the real thing. The same principle, but on a different state of facts, was ruled upon in *Matter of Sperduto* v. *N. Y. C. Inter. R. Co.* (226 N. Y. 73). This Court of Appeals case dismissed an appeal taken from a decision of this court reported in 186 Appellate Division, 145. The Court of Appeals went outside of the dismissal of the appeal and laid down the rule that if the decision of the Appellate Division had been appealable, its decision would have been the same, because of the absence of notice. That rule should be applied here. Defendants should have their day in court.

I advise that the award be set aside and the matter remitted to the Commission for a rehearing with notice to all parties.

Award reversed and claim dismissed.