In the Matter of the Application of ELLEN T. SMITH, as Administratrix, etc., of EDMOND H. SMITH, Deceased, Petitioner, against INCORPORATED VILLAGE OF SEA CLIFF, Respondent.

County Court, Nassau County, February 25, 1933.

*George V. Fleckenstein,* for the petitioner.

*Jenkins, Dimmick & Finnigan* [*William V. Shelton* and *W. E. J. Collins* of counsel], for the respondent.

JOHNSON, J. In this proceeding the petitioner seeks to recover from the respondent village the sum of $3,000 upon the ground that the intestate, Edmond H. Smith, being an active member of

a volunteer fire company in the respondent village, died from injuries incurred while in the performance of his duties as such fireman. Recovery is sought under the provisions of subdivision 1 of section 205 of the General Municipal Law. Jurisdiction to determine the controversy arising under the provisions of that section is conferred thereby upon the county judge of the county. As required by the statute, the proceeding was instituted by petition to which the respondent village answered, and upon those pleadings a hearing has been had and testimony taken.

From the pleadings and the testimony the following appears: The deceased, Edmond H. Smith, was a member of a volunteer fire company of the respondent village, operating within its limits and had been for several years prior to his death. As such volunteer fireman it was his duty to respond to alarms of fire and operate as chauffeur certain automotive fire apparatus. He lived about two blocks distant from the fire house. On July 18, 1929, an alarm of fire was sounded. The decedent was at his home. As was his duty he responded immediately and hastily walked or ran to the fire house. The testimony indicates that he ran part if not all the distance, and at least a distance of 200 feet. When he reached the fire house he ascended the driver's seat in the automotive apparatus and proceeded to drive the same out of the fire house to the fire. Another fireman was seated beside him. The apparatus proceeded properly for some distance in the direction of the fire. The decedent's companion then observed that the apparatus was moving erratically toward the curb, looked at the decedent and saw that he was slumped over the wheel, whereupon the decedent's companion seized the wheel and brought the apparatus to a stop. Smith, the driver, was dead. The undisputed testimony is that he died from acute dilatation of the heart.

Acute dilatation of the heart being the immediate cause of decedent's death, the petitioner contends that such dilatation resulting in death was an " injury " within the meaning of the statute brought about by the physical exertion, activity and excitement to which the decedent was subjected in hastening to respond to the alarm and in operating the apparatus. In so contending, the petitioner seeks to find an analogy in the provisions of the Workmen's Compensation Law and the decisions thereunder. As in my opinion such analogy is compelling, an examination of that statute and of those decisions is of importance.

By virtue of the Workmen's Compensation Law, the employer is required to secure and to pay or provide compensation to his employees for " injury arising out of and in the course of the employment, without regard to fault as a cause of the injury."

(See § 10.) Injury is defined to mean " only accidental injuries arising out of and in the course of employment." (See § 2, subd. 7.)

It will thus at once be noted that under the Workmen's Compensation Law it is only " accidental injuries " that require compensation, whereas in section 205 of the General Municipal Law, it is " injuries " generally. Consequently under the latter statute the right to compensation is broader and less restricted if anything than under the Workman's Compensation Law.

The purpose and intent of the Workmen's Compensation Law is to protect and secure workmen and their dependents from want in case of injury or death incurred while engaged in the employment and to make reasonable compensation for injuries sustained or death incurred by reason of such employment as a part of the expense of the business. (*Matter of Post* v. *Burger*, 216 N. Y. 544.)

That statute, therefore, should be liberally construed to effect such purpose and intent. (*Matter of Waters* v. *Taylor*, 218 N. Y. 248; *Matter of Heitz* v. *Ruppert*, Id. 148.)

That act, however, does not afford compensation for injuries which are merely contemporaneous or coincident with the employment or collateral to it. In order to be compensable the injury must be the result of the employment and flow from it as the inducing proximate cause. In other words, in order to establish the right to compensation there must be proven by facts a direct connection between the injury as a result and the employment as its proximate cause. Consequently, for example, where an employee suffered a hernia while at work but no evidence was adduced as to the nature or cause of the hernia, no attempt made to prove that a lifting or strain could have produced it, but on the contrary it appeared that it might well have arisen from natural causes without any unusual lifting or strain, compensation may not be awarded. (*Matter of Alpert* v. *Powers*, 223 N. Y. 97.)

On the other hand, even prior to the decision last cited, a compensable injury had been held to exist in cases where a stroke of apoplexy resulting in death, or a dilatation of the heart resulting in death, were induced by an unusual or excessive exertion on the part of the employee in the course of his employment. ( *Uhl* v. *Guarantee Construction Co.*, 174 App. Div. 571; *Fowler* v. *Risedorph Bottling Co.*, 175 id. 224; *Matter of Cowen* v. *Cowen, etc., Co.*, 176 id. 924.)

Shortly following the *Alpert Case* (*supra*) the Court of Appeals held similarly in *Matter of Hansen* v. *Turner* (224 N. Y. 331). In that case the employee collapsed and fell while at work. No one saw the occurrence. His coemployee found him unconscious. He died the following morning and death was found to have been

due to a blood clot and pressure on the brain. There being nothing to indicate that his collapse and fall were due to anything connected with his employment, but on the contrary all of the evidence showing that it was due to previous injury or disease, compensation was not allowed.

On the other hand, where the employee suffered from a hernia which the evidence showed or indicated was caused by strain from lifting heavy material in the course of his employment, compensation was allowed. (*Matter of Veneroni* v. *Baush & Lomb Optical Co.*, 229 N. Y. 628; *Matter of Jordan* v. *Decorative Co.*, 230 id. 522.) In the *Veneroni Case* (*supra*) the Court of Appeals affirmed upon the determination by the Appellate Division that the evidence, including the employer's statement of the injury, established the claim, such statement reporting that the employee was injured while doing his regular work and that the injury was caused by strain from lifting. In the *Jordan Case* (*supra*) the employee lifted a heavy box, strained his side and hernia resulted. The Court of Appeals said that there was no doubt that this was an accidental injury within the meaning of the statute, differentiating the *Alpert Case* (*supra*) upon the ground that in that case there had been no finding of any causal relation between the strain and the rupture. The principle thus established is that where a causal relation between the strain and the injury is found and proven, it is within the statute and is compensable.

The same principle was applied in *Matter of Barath* v. *Arnold Paint Co.* (238 N. Y. 625) and *Matter of Mausert* v. *Albany Builders* (250 id. 21). In the *Barath* case the employee, while working on a scaffold in the regular course of his employment, suffered an apoplectic stroke, fell from the scaffold, fracturing his skull, and died. In the *Mausert Case* (*supra*) the employee, while driving as a teamster in the course of his employment, fell from his seat, the wheels of the vehicle passed over his body, and he died. The cause of his fall was entirely unexplained but it was suggested or inferred that it resulted from some illness. The court pointed out that physical seizure unrelated to the employment is not such an accident as is compensable. Nevertheless, compensation was allowed in both cases by disregarding the cause and determining only that death resulted from the fall and that the fall resulted while the employee was engaged in the course of his employment and carried with it consequences which would not have occurred except for the employment.

It may be deduced from these decisions that the principle to be applied is as follows: The fact that the employee was suffering from a disease does not necessarily bar him from right to com-

pensation in case of injury; but an award may be made in the case of disability or death, the proximate cause of which was an injury incurred in the course of his employment which accelerated or aggravated the existing disease. It is not sufficient that the diseased person merely suffered misfortune while at work. If the disability or death resulted from the disease as a proximate cause, there being no causal connection between the injury and the employment, it is not compensable, but if, the disease existing, nevertheless the acts of the employee in the course of employment constituted a proximate contributing cause to the disability or death, that is, where there is a direct causal connection between his exertion in his employment and the injury, an award can and should be made.

This is the law not only in New York but in other States of the Union and in Canada. (England: *Clover & Co.* v. *Hughes,* 1910 A. C. 242; *Fenton* v. *Thorley & Co.,* 1903 A. C. 443; Massachusetts: *Brightman's Case,* 220 Mass. 17; *Fisher's Case,* Id. 581; *Madden's Case,* 222 id. 487; New Hampshire: *Guay* v. *Brown Co.,* 60 A. L. R. 1284; Maine: *Patrick* v. *Ham,* 119 Me. 510; 13 A. L. R. 427; *Brown* v. *Nelson,* 123 Me. 424; 60 A. L. R. 1293.)

The principle and the rule to be applied have been set forth and explained with great clarity in *Madden's Case (supra),* which case, as well as the English cases above cited, has been cited with approval by the New York Court of Appeals. (See, for example, *Matter of Alpert* and *Matter of Jordan, supra.*)

This principle and rule have been sustained and applied generally. The authorities and precedents are too numerous for extended citation. (For collection of such authorities see 6 A. L. R. 1253, and Annotation, p. 1256; 7 id. 1611, and Annotation, p. 1614; 13 id. 427, and Annotation, p. 438; 19 id. 90, and Annotation, p. 95; Id. 107, and Annotation, p. 110; 28 id. 200, and Annotation, p. 204; 60 id. 1284, and Annotation, p. 1299.)

Brief reference to some of those authorities in which the situation was analogous to that here presented may be helpful. In *Crosby* v. *Thorp-Hawley Co.* (206 Mich. 250; 6 A. L. R. 1253) a traveling salesman hurrying to catch a train while carrying heavy grips and becoming excited as he ran to catch the train, suffered from paralysis caused by the bursting of a blood vessel in the brain. It was held to be an accidental injury requiring compensation. In *Schroetke* v. *Jackson-Church Co.* (193 Mich. 616) it was similarly held that a watchman with a weak heart was entitled to compensation where death resulted from heart failure due to exertion and excitement in performing his duty to give an alarm of fire. In *Brightman's*

*Case* (*supra*) the Massachusetts court made a similar determination in a case where the cook upon a lighter died from heart disease due to his exertion in saving his personal property when the vessel began to sink. In *Baggot & Co.* v. *Industrial Commission* (290 Ill. 530; 7 A. L. R. 1611) compensation was allowed in the case of an employee where rupture of the aorta resulted from increased blood pressure due to his lifting a heavy weight although the heavy work was not unusual in the course of his employment. To the same effect was the determination of the Maine Supreme Judicial Court in *Patrick* v. *Ham* (*supra*) where hemorrhage resulted while an employee was helping lift a sack of grain. In *Carroll* v. *Industrial Commission of Colorado* (69 Col. 473; 19 A. L. R. 107) compensation was allowed where death resulted to the employee caused by breathing dust-laden air in the place where he was working. In *Madden's Case* (*supra*) compensation was allowed where there was evidence from which it might be inferred that the employee suffered from heart trouble and that, while pulling a carpet from a roll in the course of her work she suffered an attack of angina pectoris although the exertion was not such as would affect a healthy person. Similarly, in *Brightman's Case* (*supra*) the acceleration of existing heart disease resulted in death sooner than otherwise it would have occurred was held to be a compensable injury. In *Guay* v. *Brown Company* (*supra*) the injury was held to be compensable in the case of an employee with a weakened heart where sudden collapse and immediate ensuing death were brought on by reason of the effect of the decedent's hard labor in the usual course of his employment. In *Brown* v. *Nelson* (*supra*) it was held to be a compensable injury where the employee while shoveling snow suffered a heart affliction from which he died three days later, it being shown that death was caused by acute dilatation of the heart due to over-exertion of the heart muscles from shoveling the snow.

The foregoing citation of authorities sufficiently indicates the principle and rule to be applied, and which are applied generally in all jurisdictions in cases of this kind. The courts of this State have passed directly upon the question of whether death resulting to an employee while engaged in the usual course of his employment is a compensable injury in a case where the employee was already suffering from a heart affliction. (*Matter of Thompson* v. *City of Binghamton*, 218 App. Div. 451.)

In that case the employee was a school janitor and one of his duties as such was to go to the school in case of a fire alarm. Such an alarm occurred, and although in fact there was no fire, the employee did not know it. He was at home at the time. He went to the school by automobile. He hurried in as fast as possible,

hastened downstairs much excited, the alarms still ringing, and tried to disconnect the electric system. He was so nervous and excited he could not do it. He went into the lavatory, his companion who had remained outside heard a noise, looked in and saw him fall. He had been suffering for two years or more from heart trouble and hardening of the arteries. Physicians testified that the fire alarm, the hurrying to the school in answer to it, his activity and nervous excitement there were sufficient causes to bring on an acute dilatation of the heart resulting in death; and the finding was that due to the circumstances above mentioned, his weakened heart gave out and his death naturally and unavoidably resulted from the unusual strain and exertion. Such strain and exertion would not have been excessive for a well man. He, however, had a diseased heart and death occurred from the strain, exertion and excitement affecting such diseased heart.

The Appellate Division sustained the award of the compensation. In so doing they were obliged to distinguish their prior decision in O'Connell v. Adirondack Electric Power Corp. (193 App. Div. 582), although the distinction is difficult to follow as the court itself admitted. They held, however, that whether there was any substantial distinction between the O'Connell case and the Thompson case, the later decisions of the Court of Appeals and particularly that of Pickerell v. Schumacher (215 App. Div. 745; affd., 242 N. Y. 577) sustained the court's position in the Thompson case. In making such determination the court said: " The excitement to which Thompson was subjected and his activity undoubtedly hastened his death, brought his diseased heart condition to the climax. The over-excitement and exertion were the real proximate cause of his death. The acute dilation of the heart was the accidental injury."

In the Pickerell Case (supra) the determination of the Appellate Division, which was affirmed by the Court of Appeals, sustained the right to compensation of an employee whose occupation was to drive a hearse. His brakes failed to hold and the hearse started to back down the hill, ran against the side of the road and stopped. The employee suffered no physical injury whatsoever. Little strain was involved in operating the steering wheel. The only " accident " to him was the mental nervous excitement resulting. The following morning he suffered an apoplectic stroke shown to have resulted from the over-excitement.

Later the same question was presented to the same department of the Appellate Division (Matter of Andrews v. Emporium Forestry Co., 224 App. Div. 327). In that case the employee was an assistant mill foreman. As a part of his duties he was required to return to

the mill after supper to help the night foreman prepare for the night work. In so doing and while near the mill, he saw sparks and smoke coming from the chimney of his house and immediately ran home, a distance of about one-eighth of a mile. His employer owned not only the mill but also the house where the employee lived. The evidence indicated that there was no real danger to the house and that as a matter of fact there was no necessity for him to go home. Several days later he died, death occurring from pulmonary embolism contributed to by dilatation of the heart, caused by the strain and excitement of running to his home. By a divided court the Third Department of the Appellate Division distinguished the *Thompson Case (supra)* and reversed the award. The Court of Appeals, however (250 N. Y. 592), reversed the Appellate Division and confirmed the award on the ground that the injuries which resulted in his death arose out of and in the course of his employment.

The *Thompson Case (supra)* was followed and approved in *Matter of Blass* v. *Long Island Motor Parkway* (222 App. Div. 706), confirming an award made by the State Industrial Commission in a case of death of an employee from heart trouble brought on by excitement while arguing with the occupant of a parked car. The *Thompson* and *Andrews Cases (supra)* were likewise followed and approved in *Matter of Shapiro* v. *Moss* (227 App. Div. 681). The principle has been applied generally in the making of awards by the State Industrial Commission in similar cases. (See Annotation to Workmen's Comp. Law, § 2, subd. 7, in McKinney's Consolidated Laws of New York, book 64.) Among the latter the petitioner's counsel calls attention to the following as particularly analogous: *Armstrong* v. *American·Red Cross* (24 State Dept. Rep. 143); *Murry* v. *Cummings Construction Co.* (Id. 297); *Eggerstadt* v. *New York Tribune, Inc.* (Id. 401).

Sufficient has been shown to demonstrate clearly that were this a claim for compensation under the Workmen's Compensation Law, an award could and should be made.

Turning then to the present case it appears that the analogy as noted above is compelling. Indeed the situation as between a volunteer fireman and the municipality which he serves calls even more strongly perhaps for compensation in case of disability or death than it does as between a paid employee and his employer in ordinary employment. As is well known, these volunteer firemen are not engaged in fire service as a vocation. They have no fixed or other compensation. They are usually paid nothing for their services and if paid at all it is a mere pittance. They render a meritorious service to the community. The fact that they render

such service with proper equipment, results in lessening the burden of the property owners through reduction in fire insurance rates. In rendering such service they risk danger to life and limb. Apart, however, from the hazardous side of the service, it is well known that the ordinary duties of a volunteer fireman subject him to a much greater degree of strain, exertion and excitement than that to which he is usually subjected in the ordinary course of his private vocation. With these circumstances in view, it is clearly apparent that section 205 of the General Municipal Law is a remedial statute enacted for the relief of volunteer firemen in recognition of their meritorious public service and that its purpose is to provide some compensation to such firemen in case of injury or to their dependents in case of death. The statute, therefore, should receive a liberal rather than a narrow and restricted construction. (*Hammond* v. *City of Fulton*, 176 App. Div. 343; *Matter of Westphal*, 144 Misc. 729; *Nash* v. *Village of Sea Cliff*, 125 id. 267.) In the case last cited the late Mr. Justice SMITH extended the relief to a volunteer fireman although at the time he received his injury he had not reached the apparatus and although the statute as it then read provided for compensation for injuries resulting when " going to a fire on the apparatus." Subsequently the statute was amended to extend relief in case of death from injuries incurred not only while in the performance of his duties as such fireman but also as a member of a fire department emergency relief squad or while attending a fire training school; and compensation for injury not only while performing his duties as fireman but also while in the firehouse, going to a fire, working at the fire, returning from the fire, testing or inspecting the apparatus or engaged as a member of a fire department emergency relief squad or attending a fire school. In other words, the Legislature has plainly indicated its purpose and intent to broaden rather than to limit or restrict the applicability of section 205 of the General Municipal Law. The statute and the intent of the Legislature behind the statute thus being clear, it should be liberally construed to effect that purpose and intent for the benefit of the fireman.

Such indeed was the determination of the Second Department of the Appellate Division in an analogous case (*Matter of Marzen* v. *Town of Huntington*, 234 App. Div. 869). In that case the decedent, a volunteer fireman, responding to an alarm, dropped dead while attending a fire. For a year previous to his death he had been suffering from a heart affliction and under the care of physicians. He collapsed about 150 feet from the scene of the fire. The death certificate indicated that the cause of death was over-exertion and that coronary disease of the heart was a contributing cause. The

coroner testified that death resulted from an acute coronary obstruction due to coronary disease, and a physician testified that the decedent died from a heart condition caused by over-exertion. It was practically undisputed that in such a case excitement and exertion were competent producing causes of death. The county judge of Suffolk county denied recovery. The Appellate Division reversed, saying: " We are of the opinion that the record is sufficient to show that Nicholas Marzen died from injuries incurred while in the performance of his duties. There is, however, no finding in the record to this effect. The ground upon which the county judge rendered his decision cannot be sustained. We are satisfied from the evidence that Marzen died from injuries incurred while working at the fire in question. Whether he was at the time working in the line of duty is a disputed question of fact. If he collapsed before the emergency fire signal was sounded in the Manor Company fire house, the claim presented by the administratrix should be dismissed." It is apparent from the opinion that, upon the evidence adduced, the Appellate Division determined that death resulted from injuries incurred by the employee while performing his duties as fireman but was obliged to remit the matter for a rehearing because of the lack in the record of a finding to that effect and because of the disputed question of fact whether at the time of his collapse the fire signal had already been sounded and the decedent was proceeding in the line of his duty.

In the case now before me, although there is some conflict in the proof, the evidence fairly indicates that the decedent for sometime previous to his death was suffering from some sort of heart affliction. The evidence is also sufficient to sustain a finding that, such being the case, the dilatation of the heart which caused his death resulted from the exertion and excitement in running to the fire house, getting out the apparatus and operating it, all in the line of his duty as an active volunteer fireman. Such being the case it follows upon principle and authority that under the statute in question he died as a result of injury incurred while in the performance of his duties as such fireman and that his administratrix, the petitioner, is entitled to the compensation provided for by the statute.

Submit findings accordingly.