# HORACE SLINGLUFF *vs.* THE ANDREW VOLK BUILDERS' SUPPLY COMPANY.

*Construction of a Guaranty—Parol Evidence to Affect Guaranty—Admission Without Objection of Incompetent Evidence.*

A guaranty of the payment of another's debt must be wholly in writing, and parol evidence is not admissible to establish some of its terms.

A guarantor of another's debt is not liable on his promise unless the failure or inability of the person primarily liable to pay the debt, is established.

When evidence, which would have been excluded if objected to, is admitted without exception, the Court is bound to treat it as properly in the case.

Defendant was the owner of ground, which he leased for 99 years to a builder who agreed to erect three houses thereon, and defendant agreed to lend him a certain sum by way of mortgage upon completion of the houses free from liens. During the progress of the work, the plaintiff and other material men who supplied the builder, signed a paper by which they agreed to accept 90 per cent. of their claims against the builder, "payment to be made upon the completion of the three houses and to be guaranteed" by the defendant. At the foot of this paper defendant wrote : " I guarantee the payment of the 90 per cent. as above, provided the above compromise is effected with all of the creditors of (the builder) as against the three dwellings and lots of ground as above set forth." It was understood that this money was to be paid by defendant from the sum he agreed to lend the builder on mortgage. Upon the completion of the houses it was discovered that judgments against the builder existed which were liens upon his leasehold interest. In an action on the guaranty, *Held*, that defendant's promise to pay was conditional upon the acceptance of the compromise by all the creditors of the builder as against the houses ; that evidence as to the existence of judgment liens thereon is admissible ; that according to the true construction of the guaranty such judgment creditors are to be included among those mentioned in the agreement, and that since the judgment creditors had not accepted the compromise, the plaintiff is not entitled to recover.

Appeal from the Baltimore City Court (DENNIS, J.)   At the trial the plaintiff's first prayer was as follows : If the Court, sitting as a jury, shall find the plaintiff made the

written proposal to the defendant offered in evidence, in the following words : For value received, we, the undersigned, hereby agree to accept ninety (90%) per cent. of our respective claims *v.* Clarence F. Gettier, trading as " John L. Gettier and Son," in full satisfaction and settlement thereof, payment to be made upon completion of the three (3) houses on Walbrook avenue, and to be guaranteed by Horace Slingluff; and upon the payment we agree to release said Gettier, and the three (3) houses and lots of ground on the north side of Walbrook avenue, west of Ninth street, in Baltimore City, from any and all claims we may have against said Gettier, and the three houses and lots of ground appurtenant thereto ; and shall further find that the defendant accepted said proposal, in writing, in the following words : " I guarantee the payment of the ninety per cent. as above, provided the said compromise is effected with all of the creditors of Gettier as against the three dwellings and lots of ground as above set forth ;" and shall further find that the plaintiff and others, who, by the evidence are shown to have signed said written proposal, are all the creditors of the said Gettier, trading as aforesaid, within the meaning of the said agreement, who have any claim as against the three houses and lots of ground, and who had such claim at the time said written proposal was made by the plaintiffs, and accepted by the defendant ; and shall further find that the said three houses mentioned are fully completed, then the verdict of the Court, sitting as a jury, must be for the plaintiffs.   (*Granted*).

. And the defendant offered the following prayer :

The defendant asks the Court to rule that the guaranty of Horace Slingluff to pay the plaintiffs in this case 90% of their claim, " provided the said compromise is effected with all the creditors of Gettier as against the three dwellings and lots of ground," includes judgment creditors of the said Gettier having judgment-liens against the said Gettier and the three lots of ground ; and if the Court, sitting as a jury, shall find that the said judgment-liens are

outstanding and unpaid, and the undisputed fact being that said judgment-creditors have not agreed to accept 90% of their respective judgments, that then the plaintiffs are not entitled to recover in this case, and that the judgment of the Court must be for the defendant. (*Rejected*).

The plaintiff specially excepted to the granting of the defendant's prayer, because there is no evidence offered in this cause showing that the judgments against Gettier were referred to in the guaranty signed by the defendant.

The cause was argued before McSherry, C. J., Fowler, Briscoe, Page, Boyd and Schmucker, JJ.

*Fielder C. Slingluff*, for the appellant.

*Alex. H. Robertson* and *J. Fred. Requardt*, for the appellee.

Schmucker, J., delivered the opinion of the Court.

The appellees, as plaintiffs in the Court below, sued the appellant upon his written undertaking to guarantee the payment of a then existing indebtedness to them by one Clarence F. Gettier. There is but one count in the declaration and that sets out at length the terms of the guaranty and avers that the appellant refused to pay the debt the payment of which he had guaranteed.

The guaranty appeared upon a paper signed by a number of persons and firms, including the appellee, which set forth that the signers agreed to accept 90 per cent. of their respective claims against Gettier in full satisfaction thereof, " *payment to be made upon completion of the three houses on Walbrook avenue, and to be guaranteed by Horace Slingluff*," and that upon the payment Gettier and the three houses would be released from all claims of the signers. At the foot of this paper was written, " *I guarantee the payment of the 90 per cent. as above; provided the said compromise is effected with all of the creditors of Gettier as against the three dwellings and lots of ground as above set forth*," which was signed by the appellant. The signers of this paper,

other than the appellant, constituted all of the dealers who had sold to Gettier the materials used in constructing the three houses.

There was testimony, which went in without exception in the Court below, as to the transactions which preceded and led up to the making of the written contract on which the suit was brought. This evidence tended to show that in November, 1897, Gettier offered to lease three lots on Walbrook avenue from the appellant and to erect a dwelling on each lot if the latter would pay him a bonus of $1,000 per lot and also lend him $1,250 on mortgage on each lot when the houses were completed. The appellant, upon being shown written proposals from the appellees and the other material men to sell to Gettier the requisite material for the erection of the houses, accepted his offer and executed to him a lease for 99 years of the three lots. Gettier, in pursuance of a promise made by him to the material men to induce them to sell him the materials, gave to each of them an order on the appellant to pay him the price of his materials when the buildings were completed. The appellant endorsed on each of these orders an acceptance as follows: "*Accepted and payable when the three houses are fully completed and ready for occupancy and free and clear of all liens.*"

All parties to this transaction evidently understood that the orders and their acceptance constituted an appropriation in advance by Gettier to the claims of the material men of the money which was to be loaned to him by the appellant on mortgage of the houses when they should be finished and free from all liens. The appellant was not asked or expected to lend the money on the houses before they were finished and freed from all liens, so as to furnish him a marketable mortgage security for the loan, and therefore he made his acceptance of the orders conditional, and the appellees and the other material men were willing to receive them in that form.

Gettier began building the houses and all went well until

about April 14th, 1898, when he called the material men together and informed them that he would be unable to finish the houses unless he received some aid or concessions, and further said that if they would accept 90 per cent. of their claims in full, the appellant would guarantee the payment of the 90 per cent. and would also furnish him with money to complete the houses. The creditors assented and thereupon the agreement to compromise and the guaranty sued on were made.

These transactions were conducted and the papers were drawn by the parties themselves without the aid of counsel, and none of them took the precaution to examine the public records to ascertain whether there were any judgments against Gettier, the lien of which, if there were any, would of course attach to the three lots when they were leased to Gettier, and would prevent him from mortgaging them with a clear title to the appellant. When the houses were finished and the appellant was called on to pay the plaintiff's claim, he for the first time ascertained that there were about $2,000 of judgments of record against Gettier, who, for that reason, was unable to mortgage the houses to him free of all liens. The appellant thereupon refused to pay the claim of the appellees, who brought suit on the guaranty.

At the trial of the case the Court, on the motion of the plaintiff, struck out the evidence of the existence of the judgments against Gettier, which had been let in subject to objection, and the appellant excepted to the Court's action. The appellees, as plaintiffs, offered two prayers, both of which were granted, and the appellant offered one prayer, which was rejected, and he excepted to the granting of the plaintiff's prayers and the rejection of his prayer.

The plaintiff's first prayer, in substance, asserted that if the Court, sitting as a jury, found the execution by the plaintiffs of the agreement to compromise with Gettier at 90 %, and that the defendant executed the guaranty at the foot of the agreement, and should further find that the persons who signed the agreement to compromise were " all

of the creditors of the said Gettier, trading as aforesaid within the meaning of the said agreement," who were such at the time of its execution, &c., &c., the verdict should be for the plaintiffs. The guaranty sued on in this case is plainly an undertaking to pay an existing debt of a third party, which the Statute of Frauds requires to be entirely in writing, and does not permit to be established partly by parol and partly by written evidence. *Frank* v. *Miller*, 38 Md. 460 ; *Moale* v. *Buchanan*, 11 G. & J. 314 ; *Lazear* v. *Union Bank*, 52 Md. 121. A guaranty of this kind belongs to the class of instruments in reference to which the rule of evidence excluding parol testimony is rigidly enforced.

If the appellant had excepted in the Court below to the introduction of the evidence of the transactions which preceded and led up to the written guaranty sued on, it would have been excluded, except in so far as it was necessary to prove the respective amounts due from Gettier to the appellees, and the construction of the terms of the guaranty would then have been a question for the Court, sitting as a Court and not as a jury, as it is well settled that the construction of all written documents is a question of law for the Court. When, however, the evidence had been permitted to go into the case without exception the Court was bound, under the rulings of this Court in the cases of *Lamb* v. *Taylor*, 67 Md. 93, and *Sentman* v. *Gamble*, 69 Md. 304–5, to deal with it as properly in the case, whether legally admissible or not, and give it the same effect as if it had in fact been legally admissible.

The evidence being thus in the case, the meaning of the guaranty was to be gathered from the written paper and the parol evidence taken together, and its construction then became a proper question to go to the Court sitting as a jury. *Roberts* v. *Bonaparte*, 73 Md. 199. We therefore think that, under the circumstances of the case as it presented itself in the Court below when the testimony was closed, the determination of the question whether the

signers of the compromise agreement were all of the creditors of Gettier as against the three houses, within the meaning of the guaranty, was properly submitted by the first prayer to the Court sitting as a jury.

We think, however, that the first prayer was defective in not requiring the Court, as a jury, to find the failure or inability of Gettier, the party primarily liable, to pay the debt at its maturity. That fact was a condition precedent to the liability of the appellant as guarantor. *Mitchell* v. *Dall*, 2 H. & G. 159.

The Court below erred in striking out the evidence of the judgment of record against Gettier. The guaranty by the appellant of the payment of 90% of the claims against Gettier was upon its face a conditional one, its express condition being " *That the said compromise is effected with all of the creditors of Gettier as against the three dwellings.*" It is true the offer to compromise described the debts to be compromised and guaranteed as " our respective claims against Clarence F. Gettier," but the guaranty, which is the instrument by which the liability of the appellant must be measured, requires in unmistakable terms that the compromise must be effected with all of the creditors of Gettier as against the three dwellings. Under these circumstances, evidence of the existence of any creditors of Gettier having liens on the three houses should have been admitted to be considered by the Court or the jury, as the case might be, in determining whether the condition of the guaranty had been complied with.

As it seems to be apparent from the record that Gettier was in fact insolvent when the three houses were finished, we would not reverse the case simply because the plaintiff's first prayer failed to require the Court, as a jury, to find his refusal or inability to pay the debts in question as a condition precedent to the defendant's liability therefor under the guaranty. If that had been the only error in the rulings of the Court below we would not have regarded the appellant as having sustained any actual injury from it.

We think, however, that the striking out of the evidence of the existence of judgment creditors of Gettier who had liens on the three houses built by him, and who did not unite in the 90 per cent. compromise, was an error which worked serious injury to the appellant. The appellees elected to discard the orders for their claims, given to them by Gettier, and conditionally accepted by the appellant, and to sue him upon his written guaranty. It was well known by all of the parties to the transaction that the money to pay these orders was to be lent by the appellant to Gettier, upon mortgage of the three houses, only when they were "*fully completed and ready for occupancy and free and clear of all liens.*" If the appellees had stood upon the accepted orders and sued the appellant for 90 per cent. of their respective amounts, the existence of the judgments against Gettier would have formed a bar to their recovery.

When, therefore, the appellees kept back the acceptances of the appellant, which they held, and sued him upon his written agreement to guarantee the payment of the 90 per cent. of Gettier's debts to them, he was entitled to hold them to the strict terms of his guaranty and demand that all persons, including judgment-creditors having liens upon the three houses, should unite in the compromise. The instruction asked for by the appellant asserted this proposition and it should have been granted.

The judgment appealed from will be reversed and a new trial awarded.

*Judgment reversed and new trial awarded.*

(Decided June 21st, 1899).