# STANDARD GAS EQUIPMENT CORPORATION ET AL. *v.* ROBERTA G. BALDWIN.

*Workmen's Compensation—Submission of Issues—Accidental
Injury—Death of Employee—Work Accelerating
Disease—Evidence—Instructions.*

Since an injury, to be compensable, must have been accidental,
it was error, in the case of a claim on account of the death of a
deceased employee, to refuse an issue as to whether he received
an injury on a named date "which was accidental in its nature."

p. 324

That evidence was admitted by the Industrial Accident Commission does not necessarily make it admissible on appeal therefrom.                                                    p. 325

Where a physician, in answer to a question as to whether, when he examined deceased in the course of professional treatment, he discovered any heart trouble, stated that they had belonged to the same lodge twenty years, and that if deceased had had any major heart trouble witness would have discovered it, there was no prejudicial error in the admission of such answer as against the objection that it was not responsive, it being clearly inferable from the answer and his subsequent testimony that witness had discovered no heart trouble.        pp. 324, 325

As a rule, it is not a matter of right to have answers stricken out because not responsive, if otherwise unobjectionable, except at the instance of the questioner.                        p. 325

In the case of a claim under the Workmen's Compensation Act on account of the death of an employee, a transcript of the death certificate of a city health department, including a medical certificate signed by the coroner, stating the place at which the death occurred and the cause thereof, apparently based on information given by the widow, was inadmissible as hearsay, and as lacking any *indicia* of reliability.                        p. 326

The improper assumption, in a hypothetical question asked an expert, of facts of which there was no evidence, was not ground for reversal, when the question was not answered.  p. 327

The death of an employee, accelerated by the shock resulting from burns accidentally received by him while at work, is a death from accidental injury in the course of his employment, although such a shock would not have caused his death except for the condition of his heart.                        p. 328

Injury or death is due to an accident, within the Workmen's Compensation Act, even though not contributed to by any exterior force, if the progress of a disease, not occupational, is hastened by some unusual strain or condition in the course of work.                                                    pp. 328, 329

A prayer that, if the injury arose from causes incident to the labor of deceased's occupation, and had its origin in the inherent nature or mode of work of the industry, his death did

not result from the injury received on a named date, was prop-
erly refused, where there was no evidence that the injury arose
from causes incident to the occupation as such, it appearing
merely that the occupation was dangerous for a man having
deceased's disease.                                           p. 330

On appeal from an award of the Industrial Accident Com-
mission, it is error to instruct the jury that, in addition to
answering the issues of fact submitted to them, they should bring
in a verdict for the claimant or for the employer and insurer.

                                                             p. 330

*Decided February 10th, 1927.*


Appeal from the Baltimore City Court (DUFFY, J.).


Claim by Roberta G. Baldwin against the Standard Gas
Equipment Corporation, employer, and the American Mu-
tual Liability Insurance Company, insurer, on account of the
death of claimant's husband, John T. Baldwin.    From a
judgment for claimant, reversing the order of the Industrial
Accident Commission, the employer and insurer appeal.
Reversed.


The cause was argued before BOND, C. J., URNER, ADKINS,
OFFUTT, DIGGES, PARKE, and WALSH, JJ.


*Roszel C. Thomsen,* with whom were *Bowie & Clarke*
on the brief, for the appellants.


*William H. Lawrence,* with whom was *V. E. Bradford*
on the brief, for the appellee.


ADKINS, J., delivered the opinion of the Court.

John T. Baldwin was an iron moulder in the foundry
room of the Standard Gas Equipment Corporation.    On
July 9th, 1925, while carrying a ladle of molten iron from
the furnace, he sank to a crouching position.    The molten
iron from his ladle spilled on the floor around him and
burned his clothing and parts of his body.    He was carried

to a hospital and on arrival there was pronounced dead. His widow, Roberta G. Baldwin, filed her claim for compensation with the Industrial Accident Commission. At the request of the insurer a hearing was held, and the commission passed an order on November 4th, 1925, disallowing her claim. From that order an appeal was taken to the Baltimore City Court, where a verdict was rendered in favor of the claimant, reversing the decision of the commission, on which judgment was entered. This appeal is from that judgment.

There are eight bills of exception. The first three are to the refusal of the court to submit to the jury three of the five issues proposed by the employer and insurer; the fourth, fifth and sixth to rulings on evidence; the seventh to the ruling on the prayers; and the eighth to the court's instruction as to the form of the verdict.

The court submitted issues one and three as proposed, which were as follows: 1. Did John T. Baldwin receive an injury on July 9, 1925, which arose out of and in the course of his employment by the Standard Gas Equipment Corporation? 3. Was the death of John T. Baldwin the result of an injury which he received on July 9, 1925? The issues refused were: 2. Did John T. Baldwin receive an injury on July 9, 1925, which was accidental in its nature? 2a. If the jury shall answer the first issue in the affirmative was such injury accidental? 4. Was the death of John T. Baldwin the result of natural causes?

There was prejudicial error in the refusal to submit to the jury issue No. 2. The answers the jury might give to the first and third issues would not necessarily have answered the second issue, and for the injury to have been compensable it must have been accidental. Issue No. 4 seems to be covered by No. 3, and appellants did not press this exception.

The fourth exception was to the permitting to be read from the transcript of the testimony before the commission the answer to the following question propounded to Dr. John H. Groshans: "Q. Do you recall when you made those exam-

inations you discovered anything to be wrong with his heart?
A. Mr. Baldwin has been a member of our lodge, Junior
Order United American Mechanics, about twenty years, and
during that time he has had little sickness and I am sure
that if he had any major heart trouble it would have come
under my observation. He has never been under the care of
the lodge for twenty years. It has always been for bronchial
trouble and colds." The court said: "Whatever was ad-
mitted by the commission will be admitted here." The court
was in error as to the general proposition. *Standard Oil
Co. v. Mealey,* 147 Md. 249. The testimony was not admis-
sible merely because it was admitted by the commission, so
the question is, Was it properly admitted for other reasons?

The witness had previously testified that he "had never
examined Mr. Baldwin for heart trouble, but I am quite sure
I examined his heart when he had these colds I attended him
for." There are two objections to the answer. One is that
it does not show when the witness attended the deceased,
and his last visit may have been too remote. He had pre-
viously stated that he had treated him probably three or
four times in twenty years. But that objection is cured
by his subsequent testimony that he treated him profession-
ally a year or so before his death. Another objection is that
the answer is not an answer to the question except by impli-
cation. But we do not find prejudicial error in the ruling.
It is clearly inferable from this answer and his subsequent
testimony that witness had discovered no heart trouble. As
a rule, it is not a matter of right to have answers stricken
out because not responsive, if otherwise unobjectionable,
except at the instance of the questioner.

The fifth exception was to permitting to be read to the
jury the transcript of death certificate of the health depart-
ment of the City of Baltimore relative to the death of Bald-
win, which included a medical certificate of death signed by
a coroner, which appeared in the transcript of record from
the commission. It clearly was not admissible under the
rules of evidence. *Metropolitan Life Ins. Co. v. Anderson,*

79 Md. 375; *State, use of Grice,* v. *County Commissioners etc.,* 54 Md. 426. It seems to have been admitted because it was a part of the record from the commission.

In *Standard Oil Co.* v. *Mealey, supra,* Chief Judge Bond, speaking for the Court, went very carefully and fully into the question of the relaxation by a court of its ordinary rule for excluding hearsay evidence on review of compensation cases, and the conclusion reached by this Court was very clearly stated and need not be repeated here. It is sufficient to say that the above testimony should not have been admitted under the rule there announced.

The transcript of the record of the health department signed by the registrar contains no medical facts, and the paper states that the data contained therein is on the information of Roberta G. Baldwin. The only important statement in this part of the record is that deceased died "on way to University Hospital 27 ward." This was known to informant only by hearsay. The medical certificate attached is signed "K. H. Gorsuch, M. D., Coroner." The only statements in this certificate were "date of death—July 9, 1925." "The cause of death was as follows: valvular heart disease. Contributory—burns on body accidental resulting from fall (secondary) on hot metal." In the part of the certificate in which the physician is supposed to give the period of attendance, when he last saw deceased, and the hour of death, is written the word "inquiry" which is taken to mean that the facts were obtained on inquiry.

This evidence had no probative value. It was not only hearsay, but it lacked the *indicia* of reliability which under some circumstances justifies the admission of hearsay testimony in these cases. In our opinion it should have been excluded in a contested case.

We find no error in the ruling which is the subject of the sixth exception. The objection is to a hypothetical question asked Dr. Marino—on the ground that it assumed certain facts of which there was no evidence—and to the refusal of the court to strike out the answer. The facts alleged to have

been improperly assumed in the question as propounded have so little substantial bearing upon the real subject of the inquiry that it is not entirely clear that the question would have been fatally defective even if the answer had been responsive to it; and besides it can hardly be said that any of the facts assumed were entirely unsupported by testimony, except the exact weight of the ladle containing the molten iron, which by common knowledge was heavy. But as a matter of fact, it does not appear from the record that the question, as asked, was answered. As read to the jury from the transcript, it appeared that after the objection was overruled by the commission, Commissioner Crothers asked: "Doctor, did he die from natural causes or from the accident?" And the witness proceeded to give his expert opinion based on all the evidence, summing it up as he went along, and gave his conclusion that "the dilation of the heart in this particular case—under those peculiar circumstances—was due to the strenuous work done by that man on that day under strenuous circumstances." *Bramble v. Shields,* 146 Md. 494; *Stewart & Co. v. Howell,* 136 Md. 423.

The seventh exception was to the refusal of defendants' A, B, C, D and "third" prayers. The first four asked for a directed verdict:

A. Because there was no legally sufficient evidence that the death of Baldwin was the result of an accidental injury arising out of and in the course of his employment.

B. Because there was no evidence legally sufficient to prove that John T. Baldwin received an injury on July 9, 1925, which arose out of and in the course of his employment.

C. Because of the lack of evidence that the death was the result of an injury which Baldwin received on July 9, 1925.

D. Because of lack of evidence of an accidental injury.

The prayer designated as "third" asked for an instruction that if the jury should find that the injury arose from causes incident to the labor of his occupation or calling, and had its origin in the inherent nature or mode of work of the

industry, and is the usual result or concomitant thereof, then the answer to the third issue must be "No."

These prayers were in our opinion all properly refused. As to the A, B, C and D prayers, no one of them could be supported on the ground that there was a lack of legally sufficient evidence.   Herman Roffles testified: "I was sitting down watching some metal in the process of melting in a furnace over there.   Mr. Baldwin came past with a ladle of iron—he passed and set it down in its proper place with his back towards the wall.   I took my eye off of him to look at the furnace and as I did some one hollered and I immediately looked around and I saw Mr. Baldwin in a sitting position and I ran to pick him up with the assistance of some more men and I carried him out in the areaway and the ambulance was summoned and he was taken to the hospital.   His clothes were burned.   After we carried him out in the area way and started to fan him he didn't last long—in the lapse of a few minutes I thought he was dead." The testimony of Dr. Howard J. Maldeis was that Baldwin was burnt on his left arm, left leg and right and left buttocks; that if he was alive at the time he received these burns they would have had a tendency to accelerate his death by reason of shock.   The jury could have found from this testimony that Baldwin's death was accelerated by the shock resulting from the burns which he accidentally received, and that would be death from accidental injury in the course of his employment, although such a shock would not have caused his death except for the condition of his heart.   *Dickson Construction Co. v. Beasley,* 146 Md. 568.

There was also testimony that Baldwin was working under unusual stress owing to the extreme heat, on account of which work had been practically suspended for three days. Dr. Marino testified that "the dilation of the heart in this particular case—under those peculiar circumstances—was due to the strenuous work done by that man on that day under strenuous circumstances."

The authorities are not in harmony as to what constitutes an accident within the meaning of the compensation laws.

In England it was held in the leading case of *Clover Clayton & Co. v. Hughes* (House of Lords), 3 B. W. C. C. 275, that the rupture of an aneurism (in such an advanced stage of disease that it might have burst at any time) by a workman while tightening a nut with a splanner, which was quite an ordinary act in his work, was an accident. The test applied in that case was whether the work then being done contributed substantially to the happening, or was merely the occasion of it. If the former, it was an accident, and the injury was compensable; otherwise, if the thing happened in the natural and ordinary progress of the disease. That case has been generally followed in England and in some jurisdictions in this country. In others it is held that injury or death due to disease is not an accident unless contributed to by some exterior force. Still others take a middle course and hold that there need be no exterior force if the progress of the disease (not occupational) is hastened by some unusual strain or condition in the course of work. In the opinion of the majority of the court the last mentioned view is the one most consonant with "accident" as ordinarily understood, and with the meaning of the Legislature.

For a general discussion of the question with citation of cases see: *Honnold on Workmen's Compensation,* page 298 *et seq.; Boyd on Workmen's Compensation,* sec. 458; *Bradbury's Workmen's Compensation Law,* vol. 1, p. 339 *et seq;* 28 *R. C. L.* 787 *et seq.; L. R. A.,* 1916A, 29 and 227; *L. R. A.,* 1917 D. 103; 13 *A. L. R.* 979; 16 *A. L. R.,* 1039; 25 *A. L. R.* 147; 41 *A. L. R.,* 1128; *La Veck v. Parke, Davis & Co.,* 190 Mich. 604; *Joliet v. Industrial Com.,* 291 Ill. 555; *Walsh v. River Spinning Co.,* 41 R. I. 490, 13 A. L. R. 956; *Kanscheit v. Garrett Laundry Co.,* 101 Neb. 702; *Ismay, Imbrie & Co. v. Williamson* (1908) A. C. (Eng.) 437; *Pace v. North Dakota Workmen's Comp. Bureau,* 51 N. D. 815; *Roach v. Kelsay Wheel Co.,* 200 Mich. 299; *Grove v. Michigan Paper Co.,* 184 Mich. 449; *Shroetke v. Jackson-Church Co.,* 193 Mich. 616; *Voorhees v. Smith Schoonmaker Co.,* 86 N. J. L. 500; *Jones v. Public Service*

*Ry. Co.,* 86 N. J. L. 646; *Winter v. Atkinson Frizelle Co.,* 37 N. J. Law J. 195; *Hanglin v. Swift & Co.,* 37 N. J. Law J. 81; *Uhl v. Guarantee Construction Co.,* 174 App. Div. 571, 161 N. Y. Supp. 659.

As to the "third" prayer, there was no evidence that the injury arose from causes incident to the occupation as such. The evidence is that the occupation was dangerous for a man with Baldwin's disease, of which, so far as the record shows, he was unaware.

The subject of the eighth exception is the instruction given the jury that in addition to answering the issues of fact submitted to them, they should bring in a verdict either for the claimant or for the employer and insurer. This instruction was erroneous. *Schiller v. Balto. & O. R. R. Co.* 137 Md. 235.

> *Judgment reversed and new trial awarded,*
> *with costs to the appellants.*

PARKE, J., delivered the following dissenting opinion:

The dead workman was fifty-four years of age and had general arterio-sclerosis and chronic nephritis, and his diseased condition made his death imminent. The medical expert for the claimant stated that the man might have dropped dead at any time from any form of exertion, such as walking down street, and expressed the opinion that his death was the result of a dilation of the heart "due to the strenuous work done by that man on that day under strenuous circumstances." The "strenuous work" was simply the usual work of a foundry that the man had been employed for some time to do in common with his co-workers. While thus engaged in his customary labor, he dropped dead. Heat was the accompaniment of his work in the foundry, and on the day of the death this artificial heat was increased by the prevailing extremely hot weather, which was the "strenuous circumstances." In the opinion of the majority, these facts are sufficient to make the workman's death compensable, notwithstanding the statute defines "injury" and "personal injury" to mean "only accidental in-

juries arising out of and in the course of employment and
such disease or infection as may naturally result therefrom."
Code, art. 101, sec. 65.

The man's disease did not result from any accidental in-
jury arising out of and in the course of his employment, but
existed wholly independent of and anterior to the hiring by
his employer.   In fact, the only contention of the appellee
is that the fatal dilation of the workman's heart was an
accidental injury within the meaning of the statute.   Such a
theory would suffice to create a valid claim, if the man had
dropped dead at any time during his day's work.   The
natural course of his diseases would have caused him to drop
dead as the result of but slight exertion, such as walking,
which he was actually engaged in doing when he was stricken.
It is true he was carrying a ladle of molten iron, weighing
sixty pounds, but this was his usual task.   His employment
required him to work in a heat, which was made greater by
the temperature of a hot summer day, but this was merely
a common incident of an employment, which exacted that
he and the other employees should work under such condi-
tions.

No accident occurred from any act of his employer or his
co-employees.   Nor did any extraneous thing happen.   He
was doing his ordinary task in a usual manner, and this
called for physical exertion, but it was the kind to which he
and his fellows were trained and regularly called upon to
employ in the ordinary discharge of their duties.   So, what
he was doing was merely the habitual and methodical per-
formance of routine labor which subjected him to no unex-
pected strain or uncommon muscular exertion.

The accidental injury arising out of the employment must
be an injury which has "the quality or condition of happen-
ing or coming by chance or without design, taking place unex-
pectedly or unintentionally in the course and as a result of
the employment." *Victory Sparkler Co. v. Francks,* 147
Md. 368, 381.   It is a something which supervenes in the
conditions of the work, and not of the workman.   Certainly,
an injury which proceeds from a hazard to which the work-

man would have been equally exposed away from his employ-
ment and which, also, cannot be definitely said to be in
causal connection with the employment, is not an accidental
injury arising out of the employment. The general applica-
tion of the doctrine approved by a majority of the Court
converts the Compensation Act into health insurance; and
will operate to the detriment of workmen by tending to make
perfect health a pre-requisite to employment.

I am authorized by Judge Digges to say that he concurs
in this dissent.