KAUFFMAN CONSTRUCTION COMPANY ET AL. *v.*
CARRIE GRIFFITH.

[No. 41, October Term, 1927.]

*Decided December 8th, 1927.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Willis R. Jones, Assistant Attorney General,* with whom were *Thomas H. Robinson, Attorney General,* and *W. Brewster Deen,* on the brief, for the appellants.

*J. Owen Knotts,* for the appellee.

Sloan, J., delivered the opinion of the Court.

Elijah Griffith was a foreman employed by the Kauffman Construction Company, of Denton, Maryland. While engaged in work on the Piney Neck Road in Kent County on August 3rd, 1925, he claimed to have received an injury which set in motion and aggravated an old heart trouble. He died on March 13th, 1926. Carrie Griffith, his widow and claimant, contends that he died as the result of the alleged injuries, while the employer and the State Accident Fund, insurer, contend that he died a natural death caused by valvular heart trouble of years' duration, unaffected by any accident, and contend there was no accident.

On September 6th, 1925, Elijah Griffith filed with the State Accident Commission a claim for compensation, which was allowed and paid to the time of his death. His widow's explanation of the delay in filing the claim by the husband was, "I thought he would get able to go to work again; that's what he always told me."

After the death of Elijah Griffith his widow, the appellee, filed a claim for compensation which, on hearing by the commission, was disallowed. From the order of the commission an appeal was taken by the appellee. On the verdict of the jury for the claimant (appellee), on the issue, "Was the death of Elijah Griffith, which occurred on March 13th, 1926, the result of an accidental injury sustained by him on August 3rd, 1925, arising out of and in the course of his employment with the Kauffman Construction Company, of Denton, Maryland?" the Circuit Court for Caroline County passed an order on April 13th, 1927, reversing the order of

the State Industrial Accident Commission of July 3rd, 1926, from which this appeal is taken.

The evidence in this record shows that on August 3rd, 1925, Elijah Griffith was at work on the Piney Neck Road in Kent County. He was operating a grader or scraper which was being hauled by a tractor operated by another employee, John M. Pardee. That evening, after the day's work was done, Griffith walked to his boarding house, a distance of two miles. When William Edge, who had been working at another place on the road, arrived at the boarding house, he found Griffith lying down. Griffith asked Edge to drive him to his home at Denton. Griffith said to him, "Bill, as I was jerking the tongue of the road scraper around I wrenched myself and I felt something tear loose in here." After eating, Edge said he and Dorsey Dowling drove Griffith home. On their arrival at Denton, Dr. Fred N. Nichols was called. Dr. Nichols said "his heart was in bad shape and couldn't go." He attributed his condition "to his chronic heart trouble he had for years." "He didn't make any particular remark about what had caused it." Dr. Nichols had treated him about three years before for an "enlarged heart and leaking valves." He said at that time his heart "was compensating," adding, "It gradually lost its compensation."

Mrs. Griffith testified that when he arrived home her husband said "he met with an accident." "He said he hurt something inside of him; he lifted the tongue or pulled the tongue of the scraper and he felt something give loose inside of him."

Dr. E. Paul Knotts was called to attend Griffith on August 5th and continued to the time of his death. He testified that, as he entered his room he asked, "What is the matter here?" and Griffith answered, "Why, Doc, I have hurt myself. I lifted the tongue of the road scraper and accidentally hurt myself and felt something burst"—I think he said "Bust in the chest." Asked to what he attributed Griffith's condition, he said, "I attributed his condition to the accidental injury sustained at Piney Neck working for the

Kauffman Construction Company on that road by the tug-
ging, as he described," and that he attributed his death to
that injury. Asked what was wrong with his heart prior to
this time, he said, "He had what is known as a compensated
heart." "Some time in his life he had some disease of the
valves of his heart. He had recovered from that. * * *
His heart had, by increased tone and muscular ability over-
come and compensated for that injury that had once been
sustained." Dr. Knotts testified that the result was to be
expected from the character of the work Griffith was doing.
In response to the question, "Why do you say Elijah Griffith
could not have suffered a decompensated heart without an
accidental injury?" he said, "Because there is always a
cause, and any cause that would be so powerful as to break
down the compensation of a compensated heart, that cause
would still be present and would be obvious in a medical
examination. There was no obvious cause other than has
been described." In answer to the question, "You don't
think this man could have a decompensated heart in the
absence of this injury?" the witness answered, "No, sir."

Dr. Knotts signed the death certificate, wherein he gave
myocarditis (defined by him as inflammation of the muscles
of the heart) as the cause of death, and endocarditis (de-
fined by him as inflammation or derangement of the inside
lining of the heart) as contributory, secondary cause.

Dr. W. W. Goldsborough testified that he had attended Mr.
Griffith for a month, beginning September 29th, 1922. At
that time he had valvular trouble. At the end of the month
he was quite comfortable and compensation had been pretty
well established. At that time he warned him that any
violent exertion might break down the compensation. He
had not seen Griffith until called in consultation with Dr.
Knotts. In reply to a question as to what he attributed Mr.
Griffith's condition to, he said: "Of course, you understand
the man had a damaged heart to begin with. When I last
saw him, which was in 1922, his heart action was pretty
well compensated. Taking the history into consideration
and the fact that he made the statement that he had been

subjected to more or less exertion, I attribute it to that fact, He simply threw an extra burden on his heart."

This is substantially the evidence upon which the appellee relies for a recovery, and is the evidence which the appellants say is legally insufficient.

John M. Pardee, the only other employee working with Griffith the day of the alleged accident, testified as to the work Griffith was doing on the grader that day, and said that a ten-year-old boy could do it. He testified that all the deceased said of his physical condition on that day was, "Well, he said he felt bad, he believed he had one of those spells coming on him." "He was talking of the heart trouble." At the end of the day's work, he said, "Griffith got off the tractor and went on, walked up the road * * * towards the boarding house." He also testified that Griffith had not lifted the tongue of the grader that day.

Clayton S. Kauffman, manager of the employer, telling of the nature of Griffith's work, said, "He had so many different kinds of work it's almost a job to name all; anything to be done in the construction line. Sometimes he would have charge of a few men, other times he would be setting forms or helping around the grader; anything that was to be done." On August 3rd the order was for Griffith to run the grader. He also testified as to the small amount of exertion required to operate the grader. The evidence of the appellants merely rebuts or contradicts that of the appellee. The action of this court is on the sufficiency of the evidence, not its weight.

There is no contention made that the accidental injury, if any, did not arise out of and in the course of employment. There is one exception, that is, to the granting of the appellee's first and second prayers, to overruling the appellant's exceptions to the appellee's second prayer, and to the refusal of the appellant's third and fourth prayers.

The appellants' third and fourth prayers asked for a directed verdict, whereby this court is called upon to decide whether there is evidence legally sufficient for submission to a jury of an accidental injury causing or contributing to the

death of Elijah Griffith. The evidence of injury comes wholly from the statements made by the deceased to a fellow workman, to two physicians, and to his wife. It is hearsay, in without objection, and must be accepted as any other evidence of the fact of the alleged injury. There is also evidence of the injury from Doctors Knotts and Goldsborough, who gave it as their opinion that the change in the condition of the decedent's heart from August 3rd had its cause in the incident of that day, and that it resulted in his death. *Stewart & Co. v. Howell,* 136 Md. 423, 430.

This court, in *Dickson Construction Co. v. Beasley,* 146 Md. 568, 575, said: "It has been established that when disease or infection is so set in motion or aggravated by an injury that disabilities result which would not otherwise have occurred, such disabilities are to be treated as the results of the injury." In *Dickson Construction Co. v. Beasley, supra,* this court quoted from *Crowley's Case,* 225 Mass. 288: "The statute prescribes no standard of fitness to which the employee must conform, and compensation is not based on any implied warranty of perfect health or of immunity from latent and unknown tendencies to disease which may develop into positive ailments if incited to activity through any cause originating in the performance of the work for which he was hired," adding, "This, we think, states the law."

In discussing the case of *Clover, Clayton & Co. v. Hughes* (1910), App. Cas. 242, 3 B. W. C. C. 275, this court said, in *Standard Gas Equipment Corp. v. Baldwin,* 152 Md. 329: "The test applied in the case was whether the work there being done contributed substantially to the happening, or was merely the occasion of it. If the former, it was an accident and the injury was compensable; otherwise, if the thing happened in the natural and ordinary progress of the disease. That case has been generally followed in England and in some jurisdictions in this country. In others it is held that injury and death due to disease is not an accident unless contributed to by some exterior force. Still others take a middle course and hold that there need be no exterior force if the progress of the disease (not occupational) is hastened by

some unusual strain or condition in the course of work. In the opinion of the majority of the court the last mentioned view is the one most consonant with 'accident' as ordinarily understood, and with the meaning of the Legislature."

In the light of the rule there laid down, in the present case we think the statement of the deceased that, when he "lifted" or "pulled the tongue" of the scraper, he "hurt something inside of him," "felt something give loose," or "wrenched" himself, with the opinion of Doctors Knotts and Goldsborough that this was the cause of the change in the heart condition, was sufficient evidence of an accidental injury to take the case to the jury. Whether the verdict was a proper one is not for us to say. That is the function of the jury. *Southern Can Co. v. Sachs,* 149 Md. 562, 568; *Todd v. Easton Furniture Co.,* 147 Md. 352.

The appellee's second prayer instructed the jury that if they found Elijah Griffith received an accidental injury on August 3rd, 1925, arising out of and in the course of his employment, which produced or caused a decompensated heart, resulting in his death, then their verdict should be for the claimant, even if they found that prior to the injury he had a compensated or weakened heart condition. To this prayer the appellants specially excepted because the prayer assumed the fact that, prior to and at the time of the alleged injury, the employee was suffering with a compensated or weakened heart condition, whereas the evidence failed to show whether he had a compensated or decompensated heart condition at the time of and prior to the alleged injury, and further because it assumes the employee died as a result of a decompensated heart, of which there is no evidence. The exception, we think, was properly overruled.

In addition to what Doctors Knotts and Goldsborough had said about his heart trouble from 1922, as hereinbefore stated, Dr. Knotts said: "I had seen the man previously. I knew the man had a compensated heart and I knew there had to be some cause why he now had a decompensated heart." "There was no disease present at the examination either in June or several months previous, nor at the time I examined him other than I have already described."

It seems to be clear from the testimony of the physicians that for years Elijah Griffith had a damaged heart which, under treatment, had become what they called "compensated," and that it so continued until June, 1925, the last time Dr. Knotts saw him before the alleged injury, with no intimation from his employer or any one else that he had not been working from June to the 3rd day of August, when, by reason of the pulling, extra exertion, strain or wrenching, it became decompensated, and because of this change in the heart condition, brought on, in the opinion of the physicians, by the alleged accident, he died.

Compensation and decompensation do not seem to be distinct diseases or affections, as the special exception implies, but different conditions of a defective or damaged heart. Dr. Knotts defined compensation in terms and by implication defined decompensation as the breaking down or loss of compensation. The Century Dictionary defines decompensation as "failing compensation of the heart in valvular disease." The second prayer was to the effect that if the jury found Elijah Griffith had had a compensated or weakened heart condition and that the trouble had been accelerated and aggravated by an accidental injury whereby the heart had become decompensated, thereby producing death, the claimant was entitled to recover. The same principle was involved in the case of *Stewart & Company v. Howell,* where the second prayer, almost identical in form and substance, was approved. *Standard Oil Co. v. Mealey,* 147 Md. 249; *Standard Gas Equipment Co. v. Baldwin, supra; Bramble v. Shields,* 146 Md. 494; *Dickson Construction Co. v. Beasley,* 146 Md. 568. See also notes to 7 *N. C. C. A.* 653; 10 *N. C. C. A.* 756; 15 *N. C. C. A.* 632.

The appellee's first prayer applies as well to this case as it did in *Stewart Co. v. Howell, supra,* wherein it was approved.

Finding no error in the court's rulings on the prayers or the exception to the appellee's second prayer, the judgment is affirmed.

*Judgment affirmed, with costs to the appellee.*